*In re* CONTEMPT OF HENRY

Docket Nos. 280372 and 281318. Submitted March 11, 2009, at Detroit. Decided March 17, 2009, at 9:00 a.m.

Nancy A. Davis obtained a divorce from Charles M. Henry (the defendant) in the Oakland Circuit Court. The defendant subsequently amassed a large child support arrearage. The court, Cheryl A. Matthews, J., appointed a receiver to collect a lump sum retirement payment the defendant was due to receive. The defendant's sister, attorney Kathy L. Henry, represented him at the time. Numerous motions, hearings, and orders followed, some of which related to the requirement that Henry turn over to the receiver funds in her trust account derived from the lump sum payment. Following a series of evidentiary hearings, the court found Henry guilty of criminal contempt for acts that included violating the court's orders and perjury. The court sentenced Henry to two days in jail, fined her $7,500, and ordered her to pay attorney fees and costs. Henry separately appealed the contempt conviction and the order imposing attorney fees and costs, and the Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. A criminal contempt proceeding is between the public and the defendant charged with contempt. MCR 3.606(A), however, provides that upon a proper showing on ex parte motion, a court must order a person accused of a contempt committed outside the court's immediate view and presence to show cause why he or she should not be punished for the contempt. Contrary to Henry's assertion, a prosecuting attorney need not initiate and prosecute criminal contempt proceedings. A private party, or the party's counsel acting in a representative capacity, may initiate and prosecute a motion to hold an opposing party in criminal contempt.

2. A criminal contempt proceeding requires some of the safeguards of an ordinary trial. Henry was not denied due process, however. Nothing in the record suggests that the receiver acted unethically, was prejudiced in prosecuting the contempt, or initiated the proceeding out of any animus toward Henry or that the process was abused once initiated.

3. The trial court did not convict Henry of any uncharged acts of criminal contempt. A defendant charged with criminal contempt is entitled to be informed of the nature of the charges against him or her and of the specific offenses with which he or she is charged. Henry faced only one criminal contempt charge arising out of her willfully and repeatedly ignoring the trial court's orders and lying to the court, a course of conduct that spanned several months. Henry was well aware of both the nature of the charge and the specific conduct with which she was charged. The trial court only found facts and made conclusions of law arising out of the original charge of criminal contempt of which Henry had notice. The trial court did not abuse its discretion.

4. MCL 600.1711(2) requires a hearing in the case of contempt committed outside the immediate view and presence of the court. The judge who presided over the proceeding in the context of which this indirect conduct occurred should preside over the contempt proceedings. Therefore, Judge Matthews properly presided over Henry's contempt proceeding.

5. The evidence was legally sufficient to support the trial court's finding that Henry committed perjury during the criminal contempt proceedings.

6. Henry's motion to disqualify the trial judge lacked both a legal and a factual basis. The trial court's aggravation with Henry stemming from Henry's disobedience showed nothing more than frustration and did not rise to the level of actual bias or prejudice, which are grounds for disqualification under MCR 2.003(B)(1).

7. The trial court's imposition of a $7,500 fine violated the ex post facto clauses of the United States and Michigan constitutions. The amended version of MCL 600.1715(1) authorizing a fine in that amount took effect after Henry committed the acts that gave rise to the charge of criminal contempt. The retroactive application of the version of the statute that enhanced the potential fine increased the level of punishment applicable. The $7,500 fine imposed must be vacated and the case remanded for resentencing with respect to the fine under the version of MCL 600.1715 in effect when Henry committed the contempt.

8. The trial court did not abuse its discretion by imposing attorney fees and costs in the criminal contempt proceeding. MCL 600.1721 requires the court to order the indemnification of any person who suffered an actual loss or injury caused by the contemnor's misconduct.

Affirmed in part, vacated in part, and remanded for resentencing.

1. CONTEMPT — CRIMINAL CONTEMPT — PROSECUTION OF CRIMINAL CONTEMPT PROCEEDINGS BY PRIVATE PARTIES.

A private party, or the party's attorney acting in a representative capacity, may initiate a criminal contempt proceeding for a contempt committed outside the immediate view and presence of the court; a prosecuting attorney need not initiate proceedings or prosecute a claim for indirect criminal contempt (MCR 3.606[A]).

2. CONTEMPT — CRIMINAL CONTEMPT — JUDGE PRESIDING AT CONTEMPT PROCEEDINGS.

In the case of a contempt committed outside the immediate view and presence of the court, the judge who presided over the proceedings in the context of which the indirect conduct constituting contempt occurred should preside over the contempt proceedings (MCL 600.1711[2]).

3. JUDGES — DISQUALIFICATION OF JUDGES — BIAS OF JUDGES — PREJUDICE OF JUDGES.

A judge is disqualified if he or she is personally biased or prejudiced for or against a party or attorney; judicial rulings do not generally constitute a basis for alleging bias unless the ruling displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes the heavy presumption of judicial impartiality (MCR 2.003[B][1]).

4. CONSTITUTIONAL LAW — CRIMINAL CONTEMPT — EX POST FACTO CLAUSE — RETROACTIVE APPLICATION OF CRIMINAL STATUTES.

The retroactive application of a statutory amendment that increases the fine that may be imposed is an increase in punishment that violates the ex post facto clauses of the United States and Michigan constitutions (US Const, art I, § 10; Const 1963, art 1, § 10).

*Caplan & Associates, P.C.* (by *David M. Caplan*), for Nancy A. Davis.

*Linda D. Ashford, P.C.* (by *Linda D. Ashford*), for Kathy L. Henry.

Before: DONOFRIO, P.J., and K. F. KELLY and BECKERING, JJ.

PER CURIAM. This criminal contempt matter arises out of the involvement of appellant, attorney Kathy

Henry, in the postjudgment child support enforcement case of her brother, defendant Charles Henry. Because appellant has not established error with regard to the trial court's criminal contempt order, we affirm that order. But appellant has established error with regard to her sentencing because the trial court's retroactive application of the amended version of MCL 600.1715, which enhanced the fine recoverable from appellant, violates constitutional ex post facto prohibitions. We affirm in part, vacate in part, and remand for resentencing with respect to the fine imposed, which shall be in accordance with the version of MCL 600.1715 in effect at the time appellant committed the contemptuous acts.

I

Plaintiff, Nancy Davis, obtained a default divorce judgment in 1994. Plaintiff received sole physical and legal custody of the couples' two children, and defendant was ordered to pay child support to plaintiff. By September 2006, defendant had amassed $30,054.29 in child support arrearages. Both plaintiff and the Oakland County Friend of the Court (FOC) attempted to collect the outstanding child support from defendant. In November 2006, plaintiff learned that defendant's employer, ThyssenKrupp Budd Company, was closing the plant where defendant worked. Defendant had accepted an early retirement offer and had signed a mutual consent retirement benefit package that was due to pay him a lump sum of $75,000 sometime in the month of January 2007.

On November 22, 2006, plaintiff filed a petition for an order to show cause for nonpayment of child support and a motion asking the trial court to direct defendant's payment of a lump sum or appoint a receiver, arguing

that the upcoming lump sum payment was her only opportunity to collect the unpaid child support. On receipt of plaintiff's petition, the trial court entered an order on November 28, 2006, ordering defendant to appear on December 13, 2006, and show cause regarding why he should not be held in contempt of court for failure to pay child support in violation of the default divorce judgment dated February 22, 1994.

The matter was assigned to a referee. Plaintiff, her counsel, defendant, and appellant, acting as defendant's counsel, were in attendance at a referee hearing on December 13, 2006. Appellant did not file an appearance as attorney of record for defendant. The referee recommended that defendant be ordered to pay the child support arrearage out of his lump sum payment, and the matter was referred to the trial court. The trial court indicated it could not hear the matter that day and instructed counsel to request that the matter be set for another date. Plaintiff's counsel did so for December 20, 2006. On that date, the trial court held a hearing regarding the referee hearing. Neither defendant nor his counsel, appellant, attended the hearing on December 20, 2006. Ultimately, on that date, the trial court issued the following order:

> Plaintiff having appeared on her Petition to show cause for non-payment of child support and offered oral argument, Defendant having failed to appear, and the court being fully advised;

> IT IS HEREBY ORDERED that Plaintiff's motion is granted. Specifically, Plaintiff is awarded the full child support arrearage as of today's date (12/20/06), from the lumpsum payment of $75,000 that Defendant is to receive from ThyssenKrupp Bud [sic] and/or UAW Local 306 within 10 days. David Finding [sic] is appointed receiver to collect and disburse said sums through the Friend of the Court and MISDU [Michigan's State Disbursement Unit].

Defendant shall pay $500.00 in sanctions/atty [sic] fees to Plaintiff's attorney which shall also be collected and disbursed from the lumpsum payment by the receiver. An immediate injunction is issued and ThyssenKrupp Bud [sic], UAW Local 306 or any other Agent shall not disburse any funds to Defendant pending contact and direction by the receiver or further court order.

On December 21, 2006, the newly appointed receiver, David Findling, filed a motion for entry of an order delineating his powers and duties as receiver, with a proposed order attached. The trial court held a hearing January 3, 2007, on the receiver's motion dated December 21, 2006. The only person who appeared at the motion was John Polderman, an associate of Findling. The case was called, and the trial court granted the motion and then signed the proposed order attached to the December 21, 2006, motion. At this time, Polderman also informed the court that he had recently learned that ThyssenKrupp Budd Company had already disbursed a check to defendant on December 14, 2006, six days before the court issued its December 20, 2006, order. Polderman stated that he had not heard anything from defendant and that his firm, as receiver, was attempting to trace and recover the funds.

Later on the morning of the January 3, 2007, hearing, appellant checked in with the trial court clerk at about 9:40 a.m., after the case had already been called. The court clerk advised appellant that the motion had been granted. Appellant asked that the case be recalled, and the clerk informed her that recalling the case was not possible.

According to appellant, on January 18, 2007, appellant gave defendant a signed check drawn on her IOLTA [Interest on Lawyers Trust Accounts] account with the amount blank. Appellant directed defendant to go to the FOC and pay his child support arrearages in the

amount of approximately $29,000. According to appellant, the FOC would not accept the payment, informing defendant that he would have to turn over the funds to the receiver. Defendant left the FOC and did not contact or pay the receiver.

The next day, January 19, 2007, Findling filed a motion and order to show cause why appellant should not be held in contempt of court. In his motion, the receiver outlined the case against appellant as follows:

(1) After being appointed, the receiver learned that ThyssenKrupp Budd Company had disbursed a check to defendant on December 14, 2006, in the amount of $85,367.36, that the cancelled check was endorsed by both defendant and appellant, and that the check was deposited in appellant's IOLTA account.

(2) The receiver directed a letter to appellant on January 11, 2007, by certified mail and fax, demanding any information on the check and the location of the funds. He enclosed a copy of the court's December 20, 2006, order and requested a response from appellant by January 18, 2007.

(3) The receiver contacted appellant's office on January 18, 2007, but was advised that appellant was unavailable. On the same date, the FOC contacted him, advising him that defendant was at the FOC's office presenting a blank check drawn on appellant's IOLTA account. The FOC advised defendant that he should make payment to the receiver, in accordance with the prior order of the trial court. Defendant left the FOC's office but did not contact the receiver.

(4) On January 19, 2007, Polderman, the receiver's associate, encountered appellant at the Wayne Circuit Court. Polderman personally served appellant with the December 20, 2006, order of the court, as well as the amended order appointing the receiver. Polderman re-

quested that appellant promptly pay the receiver.

(5) Also on January 19, 2007, the receiver went to appellant's office and hand-delivered another copy of the amended order appointing the receiver. He contacted appellant on her cell phone and demanded that she turn over the funds in accordance with the court's orders. When the receiver asked appellant if she would comply with the court's orders, appellant indicated that she would file an "emergency motion" and that the receiver should "file [his] show cause."

(6) Appellant indicated that she had the funds in her account, but also indicated that she was never properly served with plaintiff's pleadings and that "the December 20, 2006 order does not accurately reflect what this Court ordered."

In conclusion, the receiver requested that the trial court hold appellant in civil contempt of court for "intentionally frustrating and failing to comply" with the court's orders. The receiver also requested that the court sanction appellant in the amount of $500 a day until she complied with the court's orders.

On January 24, 2007, appellant filed a motion to set aside the order appointing a receiver, to modify child support, and to set aside the order entered December 20, 2006. Appellant contended that neither she nor defendant had been notified of the December 20, 2006, hearing and as a result, plaintiff's counsel

> unilaterally induced the Court to enter an Order intercepting the proceeds from Defendant's employer, ordering that a receiver be appointed, and that Defendant pay future child support at a rate not commensurate with his income, and also ordering that he must pay counsel for Plaintiff's attorney fees and the expenses for a receiver.

The receiver responded to appellant's motion on January 29, 2007, arguing that appellant's motion was

merely an attempt to shift the focus from defendant and appellant's refusal to follow the court's orders, and again asked that the trial court hold appellant in contempt of court for failing to turn over defendant's funds that were in her possession so the receiver could distribute them in accordance with the court's orders. Plaintiff responded to appellant's motion on January 31, 2007, arguing that both defendant and appellant should be held in contempt of court for failing to pay the child support arrearage as ordered by the court.

On January 31, 2007, the trial court held a hearing on appellant's motion, but adjourned the receiver's motion to hold appellant in contempt of court. The motion hearing was very contentious. Appellant continued to assert that neither she nor defendant had received notice of the December 20, 2006, hearing. Plaintiff's counsel argued that defendant had been served by mail at two addresses and stated that appellant had not been mailed notice of the hearing because she had not filed an appearance with the court. Appellant admitted that she had not filed an appearance as the attorney of record until after the December 20, 2006, hearing. In fact, she stated that she had not filed it until about a week before the current hearing. Appellant resisted turning over the full amount of the funds to the receiver, stating that the money was "safe in [her] client trust account." But she later admitted that "part of the moneys are not even in my possession," that "there's been some disbursements," and that only $35,000 remained in her trust account. On February 1, 2007, the trial court entered an order commanding appellant to turn over all funds held on behalf of defendant to the receiver and to deliver an accounting to the receiver. The order also adjourned the show cause hearing regarding appellant's alleged contempt to February 28, 2007.

On February 2, 2007, appellant turned over $75,000 to the receiver. Appellant also submitted an accounting to the receiver, representing that defendant received the $85,367.36 check on December 19, 2006, that she "deposited $85,367.00 and reserved $75,000" in her trust account, and that on January 31, 2007 a $75,000 check was withdrawn from the account and forwarded to the receiver. Appellant also represented that $10,367.36 remained in the IOLTA account. On February 6, 2007, appellant turned over the remaining $10,367.36 to the receiver, making the full amount $85,367.36. Appellant submitted that she had misinterpreted the court's orders and initially believed that she was only required to turn over $75,000, not the full amount of $85,367.36.

On February 20, 2007, the receiver filed a brief in support of an evidentiary hearing, arguing that although appellant had purged her civil contempt, appellant should be held in criminal contempt of court for "wilfully and repeatedly" ignoring the court's orders and lying to the court regarding the disposition of funds held in her IOLTA account. The trial court held a series of criminal contempt evidentiary hearings on February 28, 2007, March 27, 2007, and May 22, 2007, during which the receiver acted as the prosecutor. On August 24, 2007, the trial court issued a written opinion and order, holding that appellant had committed criminal contempt in a series of violations stemming from her representation of defendant, including violations of the Michigan Rules of Professional Conduct, committing perjury, affirmatively lying to the court and lying to the court by omission, violating court orders, and failing to deliver and fully account for the funds at issue. The trial court held a sentencing hearing on September 6, 2007, at which the trial court imposed the criminal sanctions of two days in jail and a fine of $7,500 and awarded

attorney fees and costs in the amount of $13,567.39.
Appellant now appeals as of right.

II

Appellant first argues that because criminal con-
tempt proceedings are between the public and the
defendant, the prosecuting attorney must appear and
prosecute the case; thus, the trial court erred when it
permitted the receiver to institute and prosecute the
case. We review unpreserved issues for plain error. *Kern
v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d
838 (2000). "To avoid forfeiture under the plain error
rule, three requirements must be met: 1) error must
have occurred, 2) the error was plain, i.e., clear or
obvious, 3) and the plain error affected substantial
rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d
130 (1999).

" 'Criminal contempt is a crime in the ordinary
sense; it is a violation of the law, a public wrong which
is punishable by fine or imprisonment or both.' " *People
v Joseph*, 384 Mich 24, 33; 179 NW2d 383 (1970),
quoting *Bloom v Illinois*, 391 US 194, 201; 88 S Ct 1477;
20 L Ed 2d 522 (1968). Criminal contempt proceedings
arising out of civil litigation "are between the public
and the defendant, and are not a part of the original
cause." *Gompers v Bucks Stove & Range Co*, 221 US
418, 445; 31 S Ct 492; 55 L Ed 797 (1911). Therefore,
appellant is correct in her assertion that criminal con-
tempt proceedings are between the public and the
defendant.

Appellant relies on the language in MCL 49.153 that
states as follows:

> The prosecuting attorneys shall, in their respective
> counties, appear for the state or county, and prosecute or
> defend in all the courts of the county, all prosecutions,

suits, applications and motions whether civil or criminal, in which the state or county may be a party or interested.

But MCR 3.606(A) specifically governs the initiation of contempt proceedings for conduct occurring outside the immediate presence of the court and states as follows:

Initiation of Proceeding. For a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either

(1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or

(2) issue a bench warrant for the arrest of the person.

Appellant ignores the fact that it is settled that our Supreme Court is the final arbiter of all matters of practice and procedure in the courts of this state. Const 1963, art 6, § 5; *Mumaw v Mumaw*, 124 Mich App 114, 120; 333 NW2d 599 (1983). In instances in which a statute and a specific court rule conflict, the court rule prevails. *In re Lafayette Towers*, 200 Mich App 269, 275; 503 NW2d 740 (1993).

Here, the receiver initiated the proceeding with a show cause motion brought pursuant to MCR 3.606(A). The record displays that the receiver was not appointed by the trial court to undertake the criminal contempt prosecution; rather, the receiver initiated the proceedings on his own. Recently, this Court addressed the question appellant has raised and specifically held that a prosecutor need not initiate proceedings or prosecute a claim for indirect criminal contempt. *DeGeorge v Warheit*, 276 Mich App 587, 600; 741 NW2d 384 (2007). According to the *DeGeorge* Court,

because it is apparent that such an ex parte motion would ordinarily, if not always, be brought by a party to a case against an opposing party and because civil cases often involve only private parties, it is manifest that the Michigan Court Rules contemplate that a private party (and by obvious extension that party's attorney acting in a representative capacity) may initiate and prosecute a motion to hold an opposing party in criminal contempt. [*Id.*]

This Court is bound to follow *DeGeorge*. See MCR 7.215(J)(1). Appellant has not shown error.

III

Next, appellant asserts that the receiver's "appointment" as prosecutor violated appellant's due process rights. Specifically, appellant alleges that the receiver's decision to initiate criminal contempt charges may have been motivated by an opportunity to "avenge past grievances" with appellant or to "prolong the proceedings, in order to incur greater fees." Further, appellant alleges that the receiver thwarted defendant's attempt to pay the outstanding child support arrearages at the FOC and then only one day later filed his show cause motion to hold appellant in contempt of court.

Whether a party has been afforded due process is a question of law, subject to review de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005). A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them. *Cross Co v UAW Local No 155*, 377 Mich 202, 217-218; 139 NW2d 694 (1966); *DeGeorge*, 276 Mich App at 591; *Brandt v Brandt*, 250 Mich App 68, 72-73; 645 NW2d 327 (2002). The appellate court may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings.

*Cross Co,* 377 Mich at 217. Clear error exists when this Court is left with the definite and firm conviction that a mistake was made. *DeGeorge,* 276 Mich App at 591.

No person may be deprived of life, liberty, or property without due process of law. US Const, Am XIV, § 1; Const 1963, art 1, § 17; *Hinky Dinky Supermarket, Inc v Dep't of Community Health,* 261 Mich App 604, 605-606; 683 NW2d 759 (2004). The essence of the right of due process is the principle of fundamental fairness. *In re Adams Estate,* 257 Mich App 230, 233-234; 667 NW2d 904 (2003). The concept of due process is flexible, and analysis of what process is due in a particular proceeding depends on the nature of the proceeding, the risks involved, and the private and governmental interests that might be affected. *In re Brock,* 442 Mich 101, 111; 499 NW2d 752 (1993). A criminal contempt proceeding requires some of the safeguards of an ordinary criminal trial. *DeGeorge,* 276 Mich App at 592. A defendant charged with contempt is entitled to be informed whether the proceedings are civil or criminal. *Id.* Further, a defendant in a criminal contempt proceeding is entitled to be informed of the charge, to be given an opportunity to prepare his or her defense, and to secure the assistance of counsel. *Id.* The defendant has a presumption of innocence and a right against self-incrimination. *Id.*

Appellant argues that she was denied due process in the criminal contempt proceeding because the process was not fundamentally fair. Essentially, she asserts that the receiver was not disinterested and was in fact motivated to pursue a claim against her in bad faith. Appellant makes her assertions with only unsupported allegations in her brief on appeal. Specifically, appellant alleges that the receiver's decision to initiate criminal contempt charges may have been motivated by an opportunity to "avenge past grievances" with appellant

or to "prolong the proceedings, in order to incur greater fees." Appellant does not support these allegations with any record evidence, and as such they amount to mere speculation and conjecture.

> It is not sufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." [*Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).]

In support of her argument, appellant identifies only one alleged event. She alleges that the receiver thwarted defendant's attempt to pay the outstanding child support arrearages at the FOC on January 18, 2007, and then only one day later filed his show cause motion to hold appellant in contempt of court. Appellant alleges in her brief on appeal that defendant told her that when he attempted to pay his child support arrearage at the FOC, an FOC employee refused to accept the check because " 'she had contacted David Findling on the phone and David Findling informed her to not accept that $29,000 from him.' " To establish that the unidentified FOC employee called the receiver and the receiver instructed the employee not to accept payment, appellant points only to her own testimony before the trial court at the contempt hearing. Though she had the opportunity to call witnesses, appellant did not call defendant, the unidentified FOC employee, or anyone else to substantiate her self-serving hearsay[1]

---

[1] The rules of evidence apply to a hearing on a contempt charge. *In re Contempt of Robertson*, 209 Mich App 433, 439; 531 NW2d 763 (1995). All relevant evidence is admissible unless the rules of evidence, or the United States or Michigan constitutions, provide otherwise. *Waknin v Chamberlain*, 467 Mich 329, 333; 653 NW2d 176 (2002); MRE 402. Under MRE

testimony. While the trial court heard appellant's testimony when this issue was explored during the evidentiary hearing, the trial court apparently did not credit appellant's testimony on this matter because it is not included as a finding of fact in the trial court's lengthy written opinion and order. By merely repeating her assertions on appeal, appellant has not shown clear error in the trial court's factual findings. *Cross Co,* 377 Mich at 218; *DeGeorge,* 276 Mich App at 591; *Brandt,* 250 Mich App at 73.

Further, nothing in the record suggests that the receiver acted unethically or was prejudiced in prosecuting the contempt. There is no evidence that the receiver initiated the contempt proceeding out of any animus toward appellant, or that once initiated the process was abused. Appellant has not established a due process violation or plain error on this record.

IV

Appellant argues that the trial court erred when it convicted appellant of uncharged acts of contempt. The issuance of an order of contempt rests in the sound discretion of the trial court and is reviewed only for an abuse of discretion. *Mason v Siegel,* 301 Mich 482, 484; 3 NW2d 851 (1942); *DeGeorge,* 276 Mich App at 591; *Brandt,* 250 Mich App at 73. If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion. *Taylor v Currie,* 277 Mich App 85, 99; 743 NW2d 571 (2007).

---

802, hearsay evidence is inadmissible absent an exception. "Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *Tobin v Providence Hosp,* 244 Mich App 626, 640; 624 NW2d 548 (2001); see MRE 801(c).

The *DeGeorge* Court recently set out the due process requirements in criminal contempt proceedings:

> When a contempt proceeding is criminal, it "requires some, but not all, of the due process safeguards of an ordinary criminal trial." [*In re Contempt of Dougherty*, 429 Mich 81, 91; 413 NW2d 392 (1987).] A defendant charged with contempt is entitled to be informed of the nature of the charge against him or her and to be given adequate opportunity to prepare a defense and to secure the assistance of counsel. [*In re Contempt of Rochlin*, 186 Mich App 639, 649; 465 NW2d 388 (1990).] A defendant charged with contempt is entitled to be informed not only whether the contempt proceedings are civil or criminal, but also the specific offenses with which he or she is charged. *Id.* [*DeGeorge*, 276 Mich App at 592.]

However, the charges need not be set forth "in the form and detail of a criminal information . . . ." *Cross Co,* 377 Mich at 215.

Appellant relies on this Court's decision in *In re Contempt of Rochlin*, 186 Mich App 639, 649; 465 NW2d 388 (1990), to support her argument that this Court must vacate her convictions of three uncharged acts of contempt because she was not given sufficient notice to defend against the charges. In *Rochlin*, the defendant was charged with three separate acts of criminal contempt. The defendant argued that he did not have sufficient notice to defend against the third charge concerning his failure to disclose, through perjury, his ownership interest in two automobiles. The trial court ultimately found defendant guilty of criminal contempt for perjury on the basis of his having made a false statement to conceal a bank account. *Id.* at 649. This Court determined that

> the act on which the third contempt charge was based was not the act of criminal contempt of which defendant was found guilty. Due process required that defendant receive

more specific notice of the charge of which he was found guilty in order to give him the opportunity to prepare a defense against that particular charge. We are not persuaded that his being informed of the charge through the opening statement of plaintiff's counsel on the first day of the contempt trial afforded him that opportunity, even though there was a delay after that first day. Therefore, defendant's conviction of the criminal contempt of perjury must be reversed. [*Id.*]

The present case is distinguishable from *Rochlin* because here appellant faced only one criminal contempt charge arising out of her "wilfully and repeatedly" ignoring court orders and lying to the court throughout the representation of her brother in his postjudgment child support enforcement case and the defendant in *Rochlin* was charged with three counts of criminal contempt arising out of three separate acts. *Id.* In *Rochlin,* the defendant was not notified of the basis of his third contempt charge until the opening statement of the plaintiff's counsel on the first day of the contempt trial. *Id.* Clearly, the *Rochlin* defendant was not informed of the specific offenses with which he was charged. Unlike the defendant in *Rochlin*, appellant here was accused of only one act of criminal contempt arising out of a course of conduct spanning several months of her representation of defendant. The receiver outlined appellant's course of conduct throughout her representation of defendant that amounted to criminal contempt in his February 20, 2007, brief in support of an evidentiary hearing. The receiver alleged that though appellant had purged her civil contempt, she should be held in criminal contempt for "wilfully and repeatedly" ignoring court orders, lying to the court, behaving in a manner that was an affront to the dignity of the court, and making a mockery of the fact-finding process. The record supports that appellant was

well aware of both the nature of the charge and the specific conduct with which she was charged.

Appellant also argues that the "criminal contempt-findings for violating MRPC 3.1, impeding the notification process and perjury must be vacated because [appellant] was not given notice and the reasonable opportunity to meet the charges by defense or explanation." When adjudicating contempt proceedings without a jury, a court must make findings of fact, state its conclusions of law, and direct entry of the appropriate judgment. *S Abraham & Sons, Inc v Dep't of Treasury,* 260 Mich App 1, 24; 677 NW2d 31 (2003).

After hearing testimony over the course of three hearings, the trial court issued a detailed 27-page opinion and order setting forth its findings of fact and conclusions of law and ultimately holding that appellant was guilty of criminal contempt. Appellant has cherry-picked certain of the trial court's findings and now alleges on appeal that they were not part of the receiver's original criminal contempt charge and thus must be vacated. But the trial court's opinion belies appellant's claim. The trial court only found facts and made conclusions of law arising out of the original charge of criminal contempt, of which appellant had notice. The trial court detailed several instances of contemptuous behavior spanning appellant's course of conduct throughout her representation of defendant, as it was required to do. *Id.* Our review of the opinion and order reveals that the trial court's findings merely supported the charged conduct, were made in support of the receiver's original charge of criminal contempt, and were not an attempt to sua sponte charge appellant with separate contempt charges. The trial court did not convict appellant of uncharged acts of criminal contempt and did not abuse its discretion. *Mason,* 301 Mich at 484; *DeGeorge,* 276 Mich App at 591; *Brandt,* 250 Mich App at 73.

V

Appellant argues that she was entitled to a full hearing before a different judge because the trial court deferred entering the contempt order for more than three months after the conclusion of the last contempt hearing. There is no doubt that this matter involved indirect contempt. A hearing must be conducted when the contempt is indirect. MCL 600.1711(2) directs that

[w]hen any contempt is committed other than in the immediate view and presence of the court, the court may punish it by fine or imprisonment, or both, after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend.

The judge who presided over the proceedings in the context of which the indirect contumacious conduct occurred should preside over the contempt proceedings. *Cross, Co,* 377 Mich at 212. Thus, the trial court properly presided over this indirect criminal contempt proceeding. *Id.*

Appellant essentially argues on appeal that during the hearing for her indirect contumacious conduct, she committed perjury, which is a form of direct contempt because it was committed in the presence of the court. When a contempt is committed in the immediate view and presence of a court and immediate corrective action is necessary, the court may summarily punish it. MCL 600.1711(1); *In re Contempt of Dudzinski,* 257 Mich App 96, 108; 667 NW2d 68 (2003); *In re Contempt of Scharg,* 207 Mich App 438, 439; 525 NW2d 479 (1994). Such direct contempt occurs when all the facts necessary to find the contempt are within the personal knowledge of the judge. *In re Scott,* 342 Mich 614, 618; 71 NW2d 71 (1955); *In re Contempt of Auto Club Ins Ass'n,* 243 Mich App 697, 712; 624 NW2d 443 (2000).

When a court defers consideration of contempt until the conclusion of the trial, another judge must consider the charges. *Scharg,* 207 Mich App at 440.

In *Scharg,* the trial court cited five incidents that occurred during the course of the trial, in the court's presence, in which the court found Scharg to be disrespectful and disruptive. But the trial court deferred the contempt citation until the conclusion of the trial. After the trial court informed Scharg that it found his conduct contumacious, Scharg requested a hearing, which the court denied. On appeal, this Court held that because the trial court deferred the contempt order until the conclusion of the trial, Scharg was entitled to a full hearing before a different judge. *Id.* at 439.

This case is unlike *Scharg.* Here, appellant was already charged with indirect criminal contempt and was already participating in the evidentiary hearings required by MCL 600.1711(2). After hearing all the evidence at the three hearings, the trial court found that the evidence showed that appellant had perjured herself during the course of the criminal contempt hearings. The trial court certainly did not find that contempt occurred during a trial and then defer the contempt order until the conclusion of the trial like the court did in *Scharg.* Appellant has not demonstrated that she was entitled to a full hearing before a different judge. *Id.*

Appellant contends that the trial court should have immediately responded to her perjured testimony and subjected her to summary punishment. Indeed, it is within the court's discretion to summarily punish direct contempt. MCL 600.1711(1); *Dudzinski,* 257 Mich App at 108; *Scharg,* 207 Mich App at 439. However, the trial court needs to have all the facts necessary to take immediate corrective action. *Scott,* 342 Mich at 618;

*Auto Club Ins Ass'n,* 243 Mich App at 712. Appellant has not shown that the trial court had all the facts necessary to take immediate corrective action, as appellant committed perjury during the evidentiary hearing. Perhaps the trial court did not determine that appellant had perjured herself until after it considered all the facts in evidence. Further, the trial court has not taken any action against appellant with regard to her perjury during the contempt hearings. The court's findings relate only to the original contempt action. Appellant has not shown that the trial court abused its discretion. *Mason,* 301 Mich at 484; *DeGeorge,* 276 Mich App at 591; *Brandt,* 250 Mich App at 73. In any event, a party cannot successfully argue reversible error on appeal when that alleged error is due to the party's own conduct. *People v McPherson,* 263 Mich App 124, 139; 687 NW2d 370 (2004), citing *People v Jones,* 468 Mich 345, 352; 662 NW2d 376 (2003).

VI

Appellant next argues that the evidence was legally insufficient to support the trial court's criminal contempt finding of perjury. "This Court reviews de novo a challenge to the sufficiency of the evidence in a bench trial." *People v Lanzo Constr Co,* 272 Mich App 470, 473; 726 NW2d 746 (2006). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at 474. "Circumstantial evidence and reasonable inferences that arise from the evidence can constitute sufficient proof of the elements of the crime." *People v Akins,* 259 Mich App 545, 554; 675 NW2d 863 (2003). The elements of perjury are " '(1) the administration to the defendant of an oath authorized by law,

by competent authority; (2) an issue or cause to which facts sworn to are material; and (3) wilful false statements or testimony by the defendant regarding such facts.' " *People v Honeyman*, 215 Mich App 687, 691; 546 NW2d 719 (1996) (citation omitted).

The court file indicates that on December 20, 2006, defendant was served with the initial order appointing a receiver. Defendant was also served with the December 21, 2006, receiver's motion for entry of an order. The proposed order delineating the receiver's powers and duties was attached to the December 21, 2006, motion. Appellant testified that she got a copy of the December 21, 2006, receiver's motion for entry of an order from her brother, who had received it in the mail. As would be expected, since she received the motion, appellant came to the court on January 3, 2007, albeit late, to represent her brother at the hearing on the receiver's December 21, 2006, motion. Appellant's own action of showing up to court on the date prescribed for the hearing of the December 21, 2006, motion belies her assertion that she knew only that a receiver had been appointed, but not that an order existed regarding the receiver's obligations. This is because the court clerk specifically testified that on the day of the January 3, 2007, hearing on the motion, after appellant arrived late, he told appellant that the motion had been called and the trial court had already granted the motion.

Appellant is a licensed attorney in the state of Michigan and admits that she has been practicing for 18 years. Appellant is most certainly aware that a court speaks through its written orders and judgments, not through its oral pronouncements. *Hall v Fortino*, 158 Mich App 663, 667; 405 NW2d 106 (1986). Thus, appellant was clearly aware that the trial court's granting of the receiver's motion for entry of an order meant

that the proposed order attached to the motion had been entered. This information taken together demonstrates the falsity of appellant's testimony at the contempt proceedings that she did not learn of the receiver's order until the receiver faxed it to her on January 11, 2007. The evidence at the evidentiary hearings and in the record support the trial court's finding that appellant lacked credibility and that appellant perjured herself while testifying in defense against her original charge of criminal contempt. Accordingly, the evidence was legally sufficient to support the trial court's contempt finding that appellant wilfully perjured herself during the criminal contempt proceedings. Appellant has not demonstrated error.

VII

Appellant argues that the trial judge should have been disqualified and, thus, that this case must be reversed and remanded for trial before a different judge. Appellant brought a motion to disqualify the trial judge, which was denied.[2] Because appellant moved to disqualify the judge in the trial court, the issue is preserved for appellate review. See MCR 2.003; *In re Schmeltzer*, 175 Mich App 666, 673; 438 NW2d 866 (1989). In reviewing a motion to disqualify a judge, this Court reviews the trial court's findings of fact for an abuse of discretion and reviews the court's application of those facts to the relevant law de novo. *Olson v Olson*, 256 Mich App 619, 637-638; 671 NW2d 64 (2003).

MCR 2.003(B)(1) provides that a judge is disqualified when the "judge is personally biased or prejudiced for or

---

[2] Order of September 5, 2007, denying the motion for disqualification of the trial judge, entered by the Honorable Wendy Potts, Chief Judge of the Oakland Circuit Court.

against a party or attorney." Generally, a trial judge is not disqualified absent a showing of actual bias or prejudice. *Gates v Gates*, 256 Mich App 420, 440; 664 NW2d 231 (2003). The mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 554; 730 NW2d 481 (2007). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a ' "deep-seated favoritism or antagonism that would make fair judgment impossible" ' and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (citations omitted).

Appellant's request for disqualification of the trial judge lacked both a legal and a factual basis. The record is replete with evidence that the trial court issued orders and that appellant refused to comply. The trial court told appellant that she needed to comply with court orders and cautioned her time after time when she outright refused. A party must obey an order of a court with jurisdiction even if the order is clearly incorrect. *Kirby v Michigan High School Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998); *Dudzinski*, 257 Mich App at 110. While the record reveals that the trial court was indeed frustrated with appellant for her blatant noncompliance with the court's orders, the record does not display that the trial court was improperly "embroiled in a running controversy" with appellant, as she argues in her brief on appeal. Instead, the record reflects that the trial court repeatedly attempted to force appellant to turn over the funds to the receiver in accordance with the court's orders, which appellant did not agree with and took personally. It is plain from

the record that the trial court and appellant butted heads throughout defendant's proceedings regarding the child support arrearage because of appellant's deliberate refusal to comply with the court's orders. But it cannot be said that the trial court's objective aggravation with appellant stemming from appellant's own disobedience evidenced anything more than frustration, and it certainly did not rise to the level of actual bias or prejudice. *Gates,* 256 Mich App at 440. Appellant has failed to establish grounds to disqualify the trial judge.

VIII

Appellant asserts that her contemptuous acts occurred before March 30, 2007, and that the trial court's imposition of a $7,500 fine therefore violates the ex post facto clauses of the United States and Michigan constitutions. The determination whether a charge is precluded by the constitutional prohibition against ex post facto laws presents a question of law, which is reviewed de novo on appeal. *People v Monaco,* 262 Mich App 596, 601; 686 NW2d 790 (2004), aff'd in part and rev'd in part 474 Mich 48 (2006). Because appellant failed to preserve her contention that the trial court lacked statutory authority to require that she pay a $7,500 fine, we review this issue to determine whether any plain error affected appellant's substantial rights. *People v Kimble,* 470 Mich 305, 312; 684 NW2d 669 (2004).

At appellant's sentencing on September 6, 2007, the trial court fined appellant $7,500 for criminal contempt in accordance with MCL 600.1715(1). MCL 600.1715(1) at that time stated (and currently states) in pertinent part:

> Except as otherwise provided by law, punishment for contempt may be a fine of not more than $7,500.00, or

imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform shall not exceed 93 days, or both, in the discretion of the court.

But MCL 600.1715 had recently been amended by 2006 PA 544 on December 28, 2006, and filed December 29, 2006. The new legislation was not ordered to take immediate effect, so its effective date was March 30, 2007, in accordance with Const 1963, art 4, § 27.[3] The prior version of MCL 600.1715(1) limited the fine to be assessed to $250 and stated as follows:

Except as otherwise provided by law, punishment for contempt may be a fine of not more than $250.00, or imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform shall not exceed 30 days, or both, in the discretion of the court.

Appellant now argues on appeal that her contemptuous acts occurred before March 30, 2007, and thus the trial court's imposition of a $7,500 fine violates the ex post facto clauses of the United States and Michigan constitutions.

Ex post facto laws are prohibited by Const 1963, art 1, § 10, and US Const, art I, § 10. *People v Callon*, 256 Mich App 312, 316-317; 662 NW2d 501 (2003). Michigan's Ex Post Facto Clause is not interpreted more expansively than its federal counterpart. *Id.* at 317. Both clauses "are designed to secure substantial per-

---

[3] Const 1963, art 4, § 27 provides: "No act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house."

sonal rights against arbitrary and oppressive legislation and to ensure fair notice that conduct is criminal." *Id.* (citations omitted).

> The test for determining whether a criminal law violates the Ex Post Facto Clause of our Constitution, Const 1963, art 1, § 10, involves two elements: (1) whether the law is retrospective, i.e. whether it applies to events that occurred before its enactment, and (2) whether it disadvantages the offender, *People v Davis,* 181 Mich App 354, 357; 448 NW2d 842 (1989). A statute disadvantages an offender if (1) it makes punishable that which was not, (2) it makes an act a more serious offense, (3) it increases a punishment, or (4) it allows the prosecutor to convict on less evidence. *People v Harvey,* 174 Mich App 58, 60; 435 NW2d 456 (1989), quoting *People v Moon,* 125 Mich App 773, 776; 337 NW2d 293 (1983). Further, the Ex Post Facto Clause does not apply to legislative control of remedies and modes of procedure that do not affect matters of substance. *Davis, supra* at 358. [*People v Slocum,* 213 Mich App 239, 243; 539 NW2d 572 (1995).]

In *Slocum,* this Court rejected the prosecutor's contention "that [a] recently amended restitution statute provide[d] the [trial] court with the authority to order defendant to pay for [extradition] costs." *Id.* This Court reasoned that applying the recently enacted restitution statute to the defendant would violate the Ex Post Facto Clause because "it is clear that the amendment would make the statute apply to defendant's extradition, and that action occurred before the amendment of the statute," and because applying the statute imposing the extradition costs to the defendant would increase his punishment. *Id.* at 243-244.

The record reveals that on February 20, 2007, the receiver filed his brief arguing that although appellant had purged her civil contempt, appellant must be held in criminal contempt of court. Though the trial court held a series of criminal contempt evidentiary hearings on Feb-

ruary 28, 2007, March 27, 2007, and May 22, 2007, filed its opinion and order in the case on August 24, 2007, and sentenced appellant on September 6, 2007, it is undisputed that the criminal contempt was based on a series of contemptuous violations stemming from her representation of defendant that concluded before the March 30, 2007, effective date of revised MCL 600.1715(1).

Thus, we conclude that, as in *Slocum*, retroactive application of the amended version of MCL 600.1715 enhancing the fine recoverable from appellant violates constitutional ex post facto prohibitions by increasing the punishment for appellant's criminal contempt committed before the effective date of the amendment of MCL 600.1715(1). Because the trial court imposed the $7,500 fine without statutory authority and because amended MCL 600.1715 may not be applied retroactively to validate the trial court's imposition of the fine, we conclude that the unauthorized imposition of the $7,500 fine constituted a plain error that affected appellant's substantial right to not have her punishment increased beyond that applicable when appellant committed her criminal contempt before the amendment of MCL 600.1715. *Kimble,* 470 Mich at 312; *Slocum,* 213 Mich App at 243-244. Accordingly, we vacate the $7,500 fine imposed as part of appellant's sentence and remand this case for resentencing with respect to the fine imposed, which shall be in accordance with the version of MCL 600.1715 in effect when appellant committed the contempt.

IX

Finally, appellant asserts that her sentence must be vacated and the case remanded for resentencing because the trial court impermissibly imposed civil remedial sanctions of attorney fees and costs in the amount

of $13,567.39 in this action for criminal contempt.[4] The decision to award attorney fees as compensation for losses incurred because of the contempt and the determination of the reasonable amount of the fees are reviewed for an abuse of discretion. *Taylor,* 277 Mich App at 99. If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion. *Id.* "Any findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error." *Id.*

This Court, in *Taylor,* has already decided the question of the authorization of attorney fees for criminal contempt. The *Taylor* Court held as follows:

> MCL 600.1721 provides that, "[i]f the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant." Thus, under a plain reading of MCL 600.1721, a court must order a person found to be in contempt of court to indemnify any person who suffers an actual loss or injury as a result of the contemnor's misconduct. See *In re Contempt of Rochlin,* 186 Mich App 639, 650; 465 NW2d 388 (1990). The sum required by MCL 600.1721 "may include attorney fees that occurred as a result of the other party's contemptuous conduct." *Homestead Dev Co v Holly Twp,* 178 Mich App 239, 246; 443 NW2d 385 (1989).
>
> Because MCL 600.1721 does not make a distinction between civil and criminal contempt, but rather requires a trial court to order a contemnor to indemnify any person who suffers an "actual loss or injury" caused by the contemnor's "misconduct," we hold that the indemnification sanction mandated by MCL 600.1721 applies even when a trial court imposes a punitive (i.e., criminal) sanction on a contemnor. The trial court did not err when

---

[4] Appellant does not challenge the reasonableness, necessity, or amount of the attorney fees and costs that the trial court assessed.

it ordered defendants to indemnify plaintiff for the losses she actually suffered as a result of defendants' contemptuous conduct. [*Id.* at 100.]

We are bound to follow *Taylor*. See MCR 7.215(J)(1). As such, the trial court did not abuse its discretion when it granted attorney fees in this criminal contempt action. *Taylor,* 277 Mich App at 99.

X

In conclusion, the only error appellant has shown is in regard to her sentencing because the trial court's retroactive application of the amended version of MCL 600.1715 enhancing the fine recoverable from appellant violates constitutional ex post facto prohibitions.

Affirmed in part, vacated in part, and remanded for resentencing with respect to the fine imposed, which shall be in accordance with the version of MCL 600.1715 in effect when appellant committed the contempt. We do not retain jurisdiction.