# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN WILLIAMS, JR.,

Plaintiff-Appellant,

v

JAMIA JALICE HUTSON WILLIAMS,

Defendant-Appellee.

UNPUBLISHED
December 20, 2018

No.  339419
Wayne Circuit Court
LC No.  16-104901-DM

Before:  GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order holding him in direct criminal contempt of court, pursuant to MCL 600.1701(a), in a hearing related to the parties' divorce proceeding. The trial court sentenced plaintiff to 45 days in the Wayne County Jail with work release, MCL 600.1711(1).  For the reasons set forth in this opinion, we vacate the trial court's order finding plaintiff in direct criminal contempt and remand for further proceedings.

## I.  BACKGROUND

This appeal stems from a dispute over health insurance for defendant that arose during the parties' divorce proceedings.  According to the register of actions, a settlement conference was held on April 17, 2017, and an order was entered the same day.  This order provided that proofs were placed on the record, that an agreement was placed on the record, that the case was closed, and that a judgment of divorce and uniform child support order would be mailed to the parties.

The judgment of divorce and the uniform child support order were each entered on May 10, 2017.  The judgment of divorce indicated that it was entered on consent of the parties. Further, as relevant to the instant appeal, ¶ 20 of the judgment of divorce provided as follows:

> **Health Insurance through COBRA:** Either party may obtain coverage for himself/herself under the other party's present medical or health insurance policy carried through his/her employment pursuant to the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA).  Each party shall, immediately upon entry of this Judgment of Divorce, notify his/her respective plan administrator of this provision, to enable the plan administrator to give proper notice to the other party pursuant to the COBRA.

-1-

The judgment of divorce also provided that it became effective and final on the date of its entry and that the trial court retained jurisdiction of the matter in order to enforce "all terms" of the judgment.

On May 26, 2017, defendant moved the trial court for correction of the final judgment of divorce to reflect "what was agreed upon by Plaintiff and Defendant April 17, 2017." Specifically, as relevant to the issue on appeal, defendant stated in her motion that the judgment of divorce was inaccurate with respect to the parties' agreement regarding insurance for defendant.

On June 14, 2017, the trial court entered an order addressing healthcare coverage for defendant. The order provided in pertinent part as follows:

> Plaintiff shall cooperate in all respects with Ford Motor Company and Blue Cross Blue Shield to correct the misrepresentations that he made to both organizations as to the date of entry of the Judgment of Divorce.

> In the event that Plaintiff is uncooperative in correcting the misrepresentations to the Ford Motor Company and Blue Cross Blue Shield and if Defendant incurs costs associated with Plaintiff's misrepresentations, the Court shall hold an evidentiary hearing.

The order further stated that the consent judgment of divorce between the parties was entered on May 10, 2017, and that "[t]his is the date of the **Qualifying Event** for purposes of Defendant's ability to obtain health care coverage."

On July 3, 2017, the trial court entered an order requiring plaintiff to appear before the court to "show cause why he should not be held in contempt for failing to adhere" to the trial court's June 14, 2017 order. The show-cause order also provided that "this show cause order shall be dismissed if [plaintiff] brings proof of correction to Courtroom 1501 no later than July 10, 2017." In addition, the show-cause order set forth the basis for its entry as follows:

> A consent judgment of divorce (hereinafter referred to as "Judgment") was entered on May 10, 2017. On June 14, 2017, an order (hereinafter referred to as "Order") was entered regarding healthcare coverage and other miscellaneous matters. . . . Plaintiff was also [required under the Order] to cooperate with Ford Motor Company and Blue Cross Blue Shield to correct misrepresentations he made to both organizations concerning the Judgment's entry date. The Court received information that Plaintiff has violated the Order by not correcting his misrepresentations made to the organizations and clarifying the date of the qualifying event for purposes of maintaining healthcare coverage for Defendant.

The trial court conducted a hearing regarding the matter on July 11, 2017. At the hearing, defendant claimed that there were issues with her securing health insurance coverage, apparently including some confusion among individuals involved with managing health insurance benefits at Ford Motor Company about the date of the parties' divorce, which provided the date of the pertinent qualifying event. Defendant indicated that she had lost health insurance coverage and that she had been calling Blue Cross Blue Shield since April trying to obtain health

-2-

insurance on her own. According to defendant, the problem was that she "had no documentation for a divorce decree showing that [she] was on [plaintiff's] insurance and that [she] was divorced at the time." Defendant further explained that she had been unable to obtain her own health insurance because she needed documentation showing "that the reason why [she] need[ed] insurance right now [was] the qualifying event, the divorce," that resulted in her being removed from plaintiff's insurance at that time. Defendant clarified that the Blue Cross Blue Shield record system indicated that she had lost coverage on April 17, 2017, rather than May 10, 2017, which was the date that the judgment of divorce was entered. Defendant stated that these dates had to match in order for her to obtain new health insurance. Finally, defendant informed the trial court that she had tried to resolve this confusion with the appropriate individuals but that plaintiff's "fake wife," Amara Burrell Williams, had been on plaintiff's health insurance policy since April 17, 2017.[1]

The following exchange then occurred between the trial court and plaintiff:[2]

*The Court*: Okay, so, sir, on April 17th, did you put your current wife on your health care coverage?

[*Plaintiff*]: April 18th, your Honor.

*The Court*: You did it on April 18th. So when did you marry your current wife?

[*Plaintiff*]: May 26.

*The Court*: So what did you tell Ford Motor Company was the status with your marriage on April 18th?

[*Plaintiff*]: I was divorced.

*The Court*: Nope. Your current wife on April 18th, with health care coverage, when Ford Motor Company put her on your health care coverage, what did you tell them the relationship was with this women [sic]?

[*Plaintiff*]: Spouse.

*The Court*: Spouse.

[*Plaintiff*]: That's because since 20—

*The Court*: No, you did say spouse?

---

[1] We note that the trial court accepted all of this information provided by defendant without ever placing her under oath during this hearing.

[2] Defendant also was not placed under oath at any point during this hearing.

[*Plaintiff*]: Yes.

*The Court*: So on April 18th you told Ford Motor Company don't cover her, my current wife, cover my other wife because that's my spouse. That's what you told them?

[*Plaintiff*]: No, I said the divorce was April 17th. That's when it was finalized. [The union representative at Ford Motor Company] even said I cannot even take [defendant] off until I see proof.

\* \* \*

*The Court*: The issue is that we have two spouses at the same time. That's what the issue is. That because of your misrepresentation to Blue Cross Blue Shield and to your—I don't know, to [the union representative] perhaps and to Ford Motor Company, you indicated in April that you had a new spouse, when in fact you were still married to this woman, and that's where the problem lies.

The fraud that you perpetrated.

Later in the hearing, defendant informed the trial court that she had "proof that there was a marriage ceremony before May 26." The trial court asked to see the document, and the following occurred:

*The Court*: Would you[, plaintiff,] identify that document, please. I'll help you if you need help. Does it say that you were married in December 2016?

[*Plaintiff*]: Yes.

*The Court*: To who?

[*Plaintiff*]: Amara.

*The Court*: You just perjured yourself with this Court. You just told me that you were married to her after—in May 2017, is that accurate?

[*Plaintiff*]: I thought you were specifically saying in April. When you was talking—was talking about when I asked for—

*The Court*: Can I see that document again, please.

[*Plaintiff*]: My current spouse be terminated. I thought you was referring to—

*The Court*: I want you to stop talking right now. This indicates that you were married on December 3rd, 2016, Kevin Williams, Jr. to Amara Diane Burrell. Is this an accurate document?

[*Plaintiff*]: I'm not sure.

-4-

*The Court*: Is this accurate that you were married on December 3rd, 2016?

[*Plaintiff*]: There was a ceremony that took place, yes.

*The Court*: Okay, and so you were married. As far as you know you were married. And did you tell Ford Motor Company and your union rep and [National Employee Services Center] that you were married and this was your new spouse back in December?

[*Plaintiff*]: No, your Honor, I did not.

*The Court*: You told them that she was your new spouse in April?

[*Plaintiff*]: Yes, your Honor.

*The Court*: Why didn't you tell them she was your new spouse in December?

[*Plaintiff*]: Because it was a case immediately following that wedding that Muskegon County Prosecutor called me, and it was a case on that matter.

\* \* \*

*The Court*: And you're still married?

[*Plaintiff*]: No—well, the marriage went into default because I was married to two people at the same time.

*The Court*: What do you mean it went into default?

[*Plaintiff*]: That's what the Muskegon County Prosecutor said that it went into—

*The Court*: I don't want to hear what the Muskegon County Prosecutor said. I want to know do you believe that you were legally married on December 3rd, 2016?

[*Plaintiff*]: No, your Honor.

*The Court*: All right, did your wife think she was legally married to you on December 3rd, 2016?

[*Plaintiff*]: Until the Muskegon County Prosecutor—my wife is here.

At this point, the trial court called Amara to testify.[3] Amara explained that she and plaintiff had a wedding ceremony on December 3, 2016, and that she thought he was divorced at the time. At some point later in December, she was contacted by the Muskegon County Prosecutor and learned that the marriage was invalid. Amara further testified that she subsequently married plaintiff again in a private ceremony on May 10, 2017.

Following Amara's testimony, the trial court set aside the judgment[4] of divorce and found plaintiff in criminal contempt of court, stating as follows:

> All right, I don't believe her. Okay, you can stop talking. I'm setting aside the Judgment of Divorce based upon the fraud that was perpetrated on this Court by the Plaintiff in this action. And so I can tell—no, stop

> * * *

> The Judgment of Divorce is set aside on the grounds for relief on fraud and intrinsic or extrinsic misrepresentation or other misconduct of the party. There's complete misconduct of this party. This is a show cause, sir. You are found in criminal contempt of court by this Court.

> And I am setting aside the judgment as of this date. And at this point you folks can take a seat and I will issue further orders.

> You are no longer divorced from this gentleman. I'm setting aside your Judgment of Divorce, all the fraudulent issues that you had to deal with are now no longer because you're no longer divorced from this man. You can take a seat. I'm going to come back on the record. Take a seat.

After a recess, the trial court read its order of direct criminal contempt into the record as follows:

> Order for direct criminal Contempt of Court on July 11, 2017, Plaintiff, Defendant[,] and Plaintiff's counsel appeared before the court for a scheduled show cause hearing. During the hearing and in the court's immediate view and presence, Plaintiff made false and inaccurate statements regarding information provided to Ford Motor Company concerning the date of dissolution of the parties['] marriage. Plaintiff's false representations impaired the authority of the Court, impeded the functioning of the Court, and harmed Defendant and the parties['] minor child.

---

[3] Amara was placed under oath.

[4] We note that the trial court entered a subsequent order on July 21, 2017, "sua sponte revers[ing] its July 11, 2017, oral ruling to set aside the parties' judgment of divorce entered on May 10, 2017" and deciding that an amended judgment of divorce would be entered instead.

The Court further finds beyond a reasonable doubt that Plaintiff's guilty [sic] of direct criminal contempt of Court[. It's] hereby ordered that Plaintiff Kevin Williams, Jr. is in direct contempt, criminal Contempt of Court pursuant to MCL [600.1701(a)] pursuant to MCL [600.1711(1)], Kevin Williams is sentenced to incarceration for 45 days in Wayne County [Jail] with no early release forthwith.

You're to be taken into custody at this time.

On the same day, the trial court issued a one-page order consistent with the order announced from the bench and containing the same rationale.

On July 18, 2017, the trial court issued an amended direct criminal contempt order, which only modified plaintiff's sentence "to allow Plaintiff to serve his contempt sentence with work release." The order also provided that plaintiff would receive credit for the time that he served under the July 11, 2017 order. The amended order did not otherwise change the July 11 order and did not provide any further findings or rationale in support of the trial court's decision to find plaintiff in direct criminal contempt.

This appeal followed, in which plaintiff challenges only the trial court's order finding him in direct criminal contempt.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision to hold an individual in contempt. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000). "If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *In re Contempt of Henry*, 282 Mich App 656, 671; 765 NW2d 44 (2009). "A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *Id*. at 668. An appellate court reviewing the trial court's contempt decision "may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *Id*. Clear error exists if the reviewing court "is left with the definite and firm conviction that a mistake was made." *Id*. at 669. To the extent that appellate consideration involves questions of law, our review is de novo. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 714.

## III. ANALYSIS

On appeal, plaintiff argues that the trial court erred by finding him in direct criminal contempt because the alleged contempt involved a mistake in having defendant removed from his health insurance and thus did not occur in the immediate view and presence of the trial court. Plaintiff further argues that he was therefore actually convicted of indirect criminal contempt but that his conviction involved several violations of his right to due process.

Plaintiff's appellate argument is premised on the difference between direct and indirect contempt. "Contempt of court is defined as a willful act, omission, or statement that tends to . . . impede the functioning of a court." *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 667

NW2d 68 (2003) (quotation marks and citation omitted; ellipsis in original). The term "direct contempt" refers to a contempt that "is committed in the immediate view and presence of a court" and that may be summarily punished by the court. *In re Contempt of Henry*, 282 Mich App at 675; see also MCL 600.1711(1) ("When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both."); MCL 600.1701(a) (stating that a court may punish "[d]isorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority"). "Such direct contempt occurs when all the facts necessary to find the contempt are within the personal knowledge of the judge." *In re Contempt of Henry*, 282 Mich App at 675. Conversely, the term "indirect contempt" refers to contempt that is " 'committed other than in the immediate view and presence of the court.' " *Id.*, quoting MCL 600.1711(2). The court must conduct a hearing when the contempt is indirect, *In re Contempt of Henry*, 282 Mich App at 675, and the court may only punish such contempt "after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend," MCL 600.1711(2).

In this case, the basis for the trial court's determination that plaintiff was in direct criminal contempt is unclear. The trial court's contempt order did not contain any specific findings of fact. Instead, the trial court's order merely asserted generally that plaintiff made "false and inaccurate statements" about the information he provided to Ford Motor Company regarding the date of the parties' divorce, but the trial court did not identify which statement or statements that plaintiff made during the hearing were false or explain the basis for its conclusion. "When adjudicating contempt proceedings without a jury, a court must make findings of fact, state its conclusions of law, and direct entry of the appropriate judgment." *In re Contempt of Henry*, 282 Mich App at 674. Because the trial court failed to make the requisite findings of fact, we have no means by which to review the propriety of its decision. Accordingly, we vacate the trial court's order finding plaintiff guilty of direct criminal contempt and remand for further proceedings not inconsistent with this opinion.[5] Based on this conclusion, there is no need to address plaintiff's specific arguments because we cannot review their merits without the necessary factual findings permitting us to first ascertain the grounds supporting the trial court's decision. Furthermore, there currently being no further relief that we may grant to plaintiff with respect to the contempt issue, plaintiff's remaining arguments are moot at this juncture. *People v Sours*, 315 Mich App 346, 352; 890 NW2d 401 (2016).

---

[5] Moreover, to the extent that it appears that the trial court may have impliedly found plaintiff in direct criminal contempt on the basis of perjury, the trial court also erred. "The elements of perjury are (1) the administration to the defendant of an oath authorized by law, by competent authority; (2) an issue or cause to which facts sworn to are material; and (3) wilful false statements or testimony by the defendant regarding such facts." *In re Contempt of Henry*, 282 Mich App at 677-678 (quotation marks and citation omitted). In this case, defendant was never placed under oath, and therefore could not have perjured himself at the July 11, 2017 hearing. *Id*.

Vacated and remanded.  We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering