*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. L. THOMAS, Minor.

UNPUBLISHED
June 27, 2019

No. 342183
Wayne Circuit Court
Family Division
LC No. 17-000220-NA

ON REMAND

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

CAVANAGH, J. (*dissenting*).

Our Supreme Court directed us to first determine whether the trial court ordered a DNA test at DHHS expense. *In re J L Thomas, Minor*, 503 Mich 917; 920 NW2d 142 (2018). Contrary to the majority's holding, I conclude that the trial court did not order a DNA test at DHHS expense. Although the referee stated at a pretrial hearing on September 20, 2017 that she would order DNA testing at DHHS expense, and her *proposed* order included the recommendation, the trial court did not sign that order. There was no written order for DNA testing entered by the trial judge and only the presiding judge, in the exercise of judicial discretion, had the authority to enter such an order for DNA testing. As this Court noted in *In re AMB*, 248 Mich App 144; 640 NW2d 262 (2001):

> Neither the court rules nor any statute permits a hearing referee to enter an order for any purpose. In fact, that a hearing referee must make and sign a report summarizing testimony and recommending action for a judge reveals that the Legislature specifically denied referees the authority to enter orders, no matter their substance. (*Id*. at 217 (footnote omitted).]

It is well established that "a court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Because the trial court did not order a DNA test at DHHS expense, DHHS was not obligated to perform DNA testing. Accordingly, I conclude that the trial court's finding on remand that it had ordered DNA testing—despite the facts that the referee had no authority to enter an order and there is no order signed by the trial judge to that effect—is clearly erroneous.

-1-

Moreover, the trial court was not required to order DNA testing. Neither respondent nor the DHHS[1] filed a paternity action under the Paternity Act, MCL 722.711 *et seq.* As a putative father only, it was respondent's responsibility to establish that he had rights as the legal father of the child. See *In re AMB*, 248 Mich App at 174. While the child's mother claimed that respondent was the father, respondent indicated that he did not know if he was or was not the child's father and stated that he "would like a DNA test." While respondent may have desired a DNA test, he has cited no legal authority establishing that he was entitled to a DNA test at the state's expense before the termination trial was conducted. In a proceeding to terminate parental rights of a putative father, it is incumbent on the putative father to take some action to establish a legal relationship with the child. See MCR 3.921(D)(2)(b), (D)(3)(b); *In re KH*, 469 Mich 621, 630 n 15; 677 NW2d 800 (2004). Nevertheless, respondent made no effort whatsoever to establish his paternity interest. Further, respondent made no effort to care for, support, or plan for the child which is consistent with his failure to assert a paternity interest. Under the circumstances of this case, the trial court was under no obligation to enter an order for DNA testing and I would not remand this matter to afford such an opportunity to respondent.

Our Supreme Court also directed us to determine whether the putative father waived any issue regarding DNA testing or the establishment of paternity by not requesting an adjournment. *J L Thomas, Minor*, 503 Mich at 917. Contrary to the majority's holding, I agree with the trial court that respondent waived the issue of genetic testing, as well as the issue of paternity. Even if respondent relied on the referee's statement that she would order DNA testing, respondent clearly knew that he had not submitted any sample for DNA testing before the termination trial began. Therefore, before the termination trial proceeded, respondent was knowledgeable enough—even without the assistance of counsel—to appraise the court that DNA testing had not been conducted. He could have requested DNA testing before the termination proceedings continued if he relied on the "order" of the trial court to establish his paternity. In other words, if respondent was denied a perceived right to DNA testing—whether his claim was legitimate or not—he had the opportunity to speak up and it was not a "stretch" to expect him to do so. Instead, respondent chose to laugh and mock the proceedings, harboring this claim for his eventual appeal. And while the majority takes issue with the fact that the referee "treated respondent differently than the biological mother," respondent had no right to be treated similarly—he was merely an *alleged* father. See MCR 3.903(A)(24). Respondent had no "parental" rights to consider at the termination trial; the biological mother's parental rights were the focus of the proceeding. In any event, under these circumstances, as in the case of *Kenner v Watha*, 115 Mich App 521, 524; 323 NW2d 8 (1982), I conclude that respondent effectively waived DNA testing, as well as the issue of paternity.

Moreover, MCR 3.921(D)(3)(b), provides that a court may find that a natural father "waives all rights to further notice, including the right to notice of termination of parental rights, and the right to an attorney if he appears, but fails to establish paternity within the time set by the court." In this case, respondent appeared and knew well before the termination hearing that his

---

[1] Under MCL 722.714(12), if the child was being supported in whole or in part by public assistance, the DHHS could have opted to file a paternity action on behalf of the child but that did not happen in this case.

paternity was at issue. Nevertheless, he failed to take any action to establish a legal relationship to the child and failed to seek additional time in which to do so; thus, for this reason, also, I agree with the trial court that the issues of DNA testing and paternity were waived. That is, the right that respondent had to attempt to establish his paternity of the child was waived by his complete failure to take *any* affirmative action in that regard—either on his own accord or with the court's assistance. Therefore, I would conclude that the trial court did not clearly err by finding that a waiver occurred.

I would also conclude that the trial court properly determined that there was clear and convincing evidence to support termination of the parental rights of the child's "unknown biological father" and that termination was in the child's best interests. Respondent fails to make any substantive argument to the contrary. Respondent's brief argument that termination should not have been considered because the child was placed with a relative is without merit. Relative placement is only one factor to consider, and the referee concluded that termination was still in the child's best interests because the child was with his siblings, in a stable home he had been in since his birth, while his mother was incarcerated, and he had no legal father. The trial court's determination was not clearly erroneous. See *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Accordingly, following remand, I would again affirm the order terminating the parental rights of the child's "unknown biological father."

/s/ Mark J. Cavanagh