*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ROBERT DONEWALD, KATHLEEN DONEWALD, and ROBERT DONEWALD JR.,

Plaintiffs-Appellees,

v

ANN DONEWALD

Defendant-Appellant,

and

EVE'S ANGELS INC., NFP,

Defendant.

UNPUBLISHED
May 26, 2022

No. 356611
Barry Circuit Court
LC No. 2018-000692-NO

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant Ann Donewald appeals by right the trial court's order finding her in contempt of court, and awarding attorney fees to plaintiffs in the amount of $5,000 pursuant to MCL 600.1715. We affirm.

## I. BACKGROUND FACTS

Defendant Ann Donewald[1] is the president, CEO, and founder of defendant Eve's Angels, a nonprofit entity dedicated to combatting sex trafficking. Plaintiffs are Ann's parents and one of Ann's brothers. According to the complaint, Ann and her children resided with her parents, and her brother and his family lived next door. Ann moved out after her parents confronted her about her "treatment of her daughter." Following her departure, Ann and Eve's Angels made allegations to the police and in public presentations on social media that plaintiffs had sexually abused her

---

[1] Also referred to as Anny Donewald.

-1-

minor son, her brother's minor son, and another grandchild. She also accused plaintiffs of involvement in sex trafficking or money laundering schemes. Criminal investigations ensued, resulting in no charges. Ann's daughter eventually informed plaintiffs that Ann had instructed her to confirm Ann's accusations for the purpose of "extract[ing] a pay-off" from her parents. Plaintiffs sued defendants for defamation and intentional infliction of emotional distress. Plaintiffs were unable to effectuate personal service, so they were granted alternate service by publication. Defendants never responded, and on February 19, 2019, the trial court entered an order of default judgment in favor of plaintiffs in the amount of $33,481 plus $10,329 in attorney fees.

Defendants moved to set aside the default judgment, but they failed to appear for the attendant April 24, 2019 hearing, and the trial court denied the motion. The trial court issued a subpoena on February 12, 2020, directing Ann to appear and produce financial documents for a debtor's examination set for March 25, 2020, but that proceeding was subsequently adjourned as a result of the Covid-19 health crisis. The trial court issued another subpoena for a debtor's examination requiring Ann to appear and produce certain financial documents, set for July 23, 2020. No proceeding took place on the latter date, however, and the record includes a July 22, 2020 proof of service for notice to appear on August 7, 2020. The latter proceeding was then put off until later in the month at the request of defendants' newly retained attorney, who informed plaintiffs that defendants were not prepared to provide the requested financial documents, asked that the debtor's examination be re-noticed for a later date, and indicated that defendants wished to settle the matter. The debtor's examination was then adjourned to August 28, 2020.

On August 28, 2020, defendants produced a partial set of documents responsive to the court's subpoena, and they requested that the debtor's examination be postponed again in order for defendants to prepare a complete set of documents. The debtor's examination was then adjourned to September 18, 2020, on which date both parties informed the court that they needed an adjournment in order to work through a settlement, and so the matter was adjourned to October 9, 2020. Defendants requested yet another adjournment on October 6, 2020, as of which time they still had not produced a full set of documents responsive to the court's subpoenas. The debtor's examination was thus postponed to October 20, 2020, then adjourned yet again to October 30, 2020.

Ann failed to appear personally for the October 30, 2020 proceeding, and she did not provide any supplemental documents responsive to the court's subpoenas. At this hearing, plaintiffs explained to the court that "[t]here's been a number of adjournments," and that the parties had been "working on a repayment agreement with a corresponding pocket judgment" for "many months." Plaintiffs stated that they believed Ann might be in the hospital, so they were "not asking for a warrant at this time," but noted that "it's the third time that I've heard that over the course of the intervening months." Plaintiffs asked the court to "set a Show Cause for [Ann] to explain why she's not here this morning," rather than "continue to clog up the Court's docket with numerous Debtor's/Creditor's Exams and adjournments." Defendants' attorney in turn explained that defendants had sent him an e-mail two nights earlier expressing the desire to terminate his representation and either seek new counsel or resort to self-representation, and that the night before he received an e-mail stating that Ann was in the hospital. Counsel further stated that he did not "really know what's going on," or "what [his] role is here" because he had been "fired," but that he would continue to act as the attorney of record until the appropriate order had been entered. The trial court expressed its frustration with defendants:

[W]e've got a March subpoena, we've got May, . . . we had March 15th, May 29th, July 23rd, August 7th, August 28th, September 18th, October 9th, October 20th, and now October 30th. I have heard each time that there have been attempts made to resolve, that the parties had provided some information but not everything and they were working on making sure they provided everything. But it's been one excuse after another on behalf of the Defendants. So, the motion . . . for an Order to Show Cause is granted.

* * *

[I]f [defendants' attorney] remain[s] in the case, [he] can notify [his] clients that they are on an extremely short leash with me, because it appears to me that they have been doing nothing but laying up obstacles to get this matter resolved. And saying we're going to resolve it and then not resolving it, saying we're [going to] comply and then not comply.

A show-cause hearing was set for November 18, 2020. Defendants' prior attorney initially appeared because he had not received a copy of the order permitting his withdrawal, but he left after the court advised him that it had in fact signed the order. Ann thereafter represented herself.[2] Plaintiffs requested a contempt order and an award of attorney fees of $5,000 "related to all of these multiple missed and deficient debtor's exams." Ann explained that she had been hospitalized for much of the summer and suffered complications since then, including passing out the night before the October 30 debtor's examination. She offered medical records in support. She further stated that she believed the various adjournments were because the parties were working out a settlement agreement, and the settlement process had stalled because she could not "sign something that isn't true." Plaintiffs acknowledged Ann's illness and that it should be taken seriously, but they pointed out that her medical difficulties began late in the proceedings, she never provided any explanation for why she could not appear by Zoom, she still had not provided all required documents, and she had proved to be "a moving target."

---

[2] It appears that Ann also represented Eve's Angels, or Eve's Angels was treated as also proceeding in propria persona. Although no one appears to have objected below, possibly because Eve's Angels was also regarded as a mere alter ego of Ann, we note that doing so is improper. Corporate entities may represent themselves, but they must do so only through agents who are otherwise authorized to practice law. *Detroit Bar Ass'n v Union Guardian Trust Co*, 282 Mich 707, 711-712; 281 NW 432 (1938); *Fraser Trebilcock Davis & Dunlap PC v Boyce Trust 2350*, 497 Mich 265, 276-277; 870 NW2d 494 (2015). All persons, lawyers and nonlawyers alike, may represent themselves, but nonlawyers commit unauthorized practice of law by representing another entity. *Shenkman v Bragman*, 261 Mich App 412, 416; 682 NW2d 516 (2004). To the extent Ann represented Eve's Angels, or to the extent Eve's Angels represented itself through Ann, such representation was illegal. However, we do not regard this error as invalidating anything that occurred in the trial court, especially because it is clear that Ann personally was regarded as the "real" party in interest, and in any event, a party's own errors generally cannot justify reversal. See *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003).

The trial court also acknowledged that Ann may have had "a very serious illness," but noted that she had been subpoenaed multiple times between March 2020 and October 2020, and found that there had "been more than enough time granted," for her to appear for a debtor's examination and provide the required financial documents pursuant to the court's subpoenas. The court further held that, aside from providing a small partial set of the financial documents required pursuant to the court's subpoenas, Ann "had yet to fulfill anything." Plaintiffs then explained that, even though they had a judgment in excess of $47,000, and had requested attorney fees of $5,000, if defendants agreed to sign a settlement agreement within a short time, they could resolve the matter for $22,800, but that they would otherwise simply pursue their legal right to the original judgment. Ann responded that she was willing to pay plaintiffs the lower settlement amount, but she would not sign an agreement containing language admitting that defendants defamed plaintiffs, because she insisted that was untrue.

The court found Ann in contempt and awarded plaintiffs attorney fees. However, as noted, plaintiffs suggested that notwithstanding the contempt finding and award of attorney fees, they would still be willing to settle the matter for a total of $22,800 if Ann "were to sign the agreement between now and a short window." The trial court accepted the proposal, stating that if the parties were able to reach a settlement by November 30, 2020, then the contempt finding and attorney fees would not take effect and the matter would be dismissed. The trial court explained that this should give defendants a "chance to go ahead and reach an agreement" and "get it effectuated without incurring . . . additional $5,000 costs." It further opined that this was "a really good deal for [defendants]," because otherwise the amount due to plaintiffs "just keeps going up." The trial court stated that if the parties could reach a settlement, "this case can be done and [Ann could] move on with [her] life and take care of [her] physical condition and concentrate more on that and not have this hanging over [her] head." The trial court expressly told Ann, "You have to get that signed agreement to [plaintiffs' attorney] by November 30th to avoid that extra $5,000, okay?" Ann did not explicitly acknowledge, but she did thank the trial court.

Plaintiffs apparently amended the language of their proposed settlement and sent it to defendants on November 20th, 23rd, 25th, and 30th, but defendants did not respond. Instead, on November 30, 2020, Ann moved to compel settlement. At the February 9, 2021 hearing on the motion, plaintiffs' counsel represented that the revised settlement proposals sent to defendants "changed the verbiage with [sic] Defendant Donewald had an issue with." Ann contended that the proposed settlement would still obligate her to say that she defamed plaintiffs, which she maintained was untrue, and she was only willing to "sign to say that I defaulted on the case."[3] Ann also argued that the contempt for failing to show up to court was inappropriate, because she could prove she had been in the hospital. The trial court admonished her that she was in contempt for failing to comply with a discovery subpoena nine times, and it further explained that it had no authority to compel a settlement. It observed that there clearly was no settlement to enforce. However, plaintiffs offered to make one more attempt at a revised settlement agreement before pursuing the full amount of their judgment plus the contempt order. The trial court agreed to that proposal, but apparently the effort failed. On March 1, 2021, the trial court entered the order holding Ann in contempt, and ordering her to pay plaintiffs' attorney fees in the amount of $5,000.

---

[3] We have not found a copy of any version of any proposed settlement in the lower court record.

This appeal followed. A notice of judgment lien in the amount of $45,323.22 was entered on May 10, 2021.

## II. JURISDICTION AND STANDARD OF REVIEW

As an initial matter, plaintiffs suggest that we may not have jurisdiction because Ann may not have an appeal by right. We disagree. MCR 7.203(A)(1) provides that this Court has jurisdiction of an appeal of right filed by an aggrieved party from a final circuit court order as defined in MCR 7.202(6). MCR 7.202(6)(a)(iv) defines a final order as a postjudgment order awarding attorney fees and costs. In ruling on the post-judgment show cause motion, the trial court held appellant in civil contempt and awarded $5,000 in attorney fees. Therefore, the March 1, 2021 order, which was a postjudgment order awarding attorney fees, was a final order appealable by right, MCR 7.202(6)(a)(iv). This Court has jurisdiction over the claim of appeal from that order.

A trial court's award of attorney fees and costs is reviewed for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). Ultimately, the "issuance of an order of contempt rests in the sound discretion of the trial court and is reviewed only for an abuse of discretion." *Id*. at 671. "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (quotation omitted).

## III. APPLICABLE LAW

When a "court employs its contempt power to coerce compliance with a present or future obligation or to reimburse the complainant for costs incurred by the contemptuous behavior, *including attorney fees*, the proceedings are civil." *Porter v Porter*, 285 Mich App 450, 455; 776 NW2d 377 (2009) (citations omitted; emphasis added). Contempt of court includes willful acts, omissions, or statements that tend to impair the authority or impede the functioning of a court. *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 667 NW2d 68 (2003). Pursuant to MCL 600.1701(g), a court is authorized to hold a party in contempt, and punish—by fine, imprisonment or both—a party "for disobeying any lawful order, decree, or process of the court." "The primary purpose of the contempt power is to preserve the effectiveness and sustain the power of the courts." *Dudzinski*, 257 Mich App at 108 (quotation and alteration omitted).

"When any contempt is committed other than in the immediate view and presence of the court, the court may punish it . . . after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend." MCL 600.1711(2). See also MCR 3.606(A). Alternatively, "[w]hen any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both." MCL 600.1711(1). MCL 600.1715 authorizes assessment of a fine of not more than $7,500, or imprisonment.

IV. ANALYSIS

Ann generally contends that the trial court held her in contempt either for failing to appear at one hearing due to her hospitalization or for refusing to sign a settlement agreement that she contends would have constituted perjury. The record refutes both arguments.

At the November 18, 2020 hearing, the trial court and plaintiffs both clearly took Ann's illness and hospitalization seriously. The trial court found, however, that the matter had been set for a debtor's exam on no fewer than nine occasions between March 25 and October 30, 2020, which was more than enough time to comply with the subpoena requiring her to provide certain documents or to negotiate a settlement. The trial court implied that it might feel differently if Ann had been making efforts to provide the missing documents, but that she had not. Ann protested that she was not served, but the trial court read the court file and acknowledged that although she might indeed not have been served for the first hearing, she was served for the remainder. Plaintiffs pointed out that although they were willing to settle, they had a right to pursue the full amount of their judgment as well as fees and costs, and the "numbers keep going up, not down." The trial court found Ann in contempt, but it agreed that no contempt order would take effect if the parties were able to reach a settlement by November 30.

Thus, the contempt finding was not for refusing to sign a settlement or for failing to appear at one particular hearing. Rather it was for repeatedly failing to appear at hearings and repeatedly failing to comply with a subpoena for documents, despite many months and ample opportunity to do so, and it reimbursed plaintiffs for the costs they incurred. See *Porter*, 285 Mich App at 455. There is competent evidence in the record to support the trial court's findings. The trial court's decision was well within the range of reasonable and principled outcomes. See *Maldonado*, 476 Mich at 388; *In re Contempt of Henry*, 282 Mich App at 668.

The record also does not show that the trial court attempted to sanction Ann into signing a settlement agreement that she believed would constitute perjury. The trial court again explained that the contempt was for missing a multitude of court dates and repeatedly failing to comply with subpoenas. It advised Ann that it had no power to compel settlements, and at the most it could make suggestions. We have not been provided with copies of any of the proposed settlements, so we have no way to know what changes, if any, plaintiffs made or what language Ann found specifically objectionable. However, the language ultimately does not matter. Plaintiffs had a right to the full amount of the judgment and, because Ann had *already* been found in contempt, to the award of attorney fees in the contempt order. The record unambiguously shows that all parties strongly desired a settlement but disagreed as to one implementation detail. The trial court did not attempt to strong-arm Ann into signing the settlement agreement as a way to purge the contempt. Rather, the trial court accepted plaintiffs' suggestion that they would, in effect, waive the additional fees granted as part of the settlement, provided Ann signed the settlement in the near future. In other words, the trial court never required Ann to sign the settlement agreement or face a $5,000 sanction; rather, it merely granted her additional time and an opportunity to negotiate an even more financially favorable settlement. That she and plaintiffs were unable to come to an

agreement has nothing to do with the trial court.  We therefore conclude that the trial court acted reasonably, and thus did not abuse its discretion, in the matter.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra