*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JDJ.

CW,

Petitioner-Appellee,

UNPUBLISHED
December 15, 2022

v

No. 359366
Calhoun Circuit Court

JDJ,

LC No. 2021-002444-PH

Respondent-Appellant.

Before: SHAPIRO, P.J., and BORRELLO and YATES, JJ.

PER CURIAM.

Respondent, JDJ, appeals as of right her bench-trial conviction for criminal contempt for violating a personal protection order (PPO), MCL 600.2950a(23). She argues that her due-process rights were violated when the trial court refused to hold a hearing on her motion to terminate the PPO within 14 days, as required by MCR 3.707(A)(2). In addition, respondent insists that the trial court violated her due-process rights by conducting a criminal-contempt hearing before addressing the motion to terminate the PPO. We affirm.

## I. FACTUAL BACKGROUND

Respondent was in a relationship with petitioner's husband, which petitioner did not know until she intercepted a text message from respondent to her husband. After that, respondent and petitioner began communicating, exchanging written messages and voice messages via Facebook Messenger over a five-month period. The exchanges became increasingly hostile. On August 30, 2021, according to petitioner, respondent sent petitioner's husband a picture of herself holding a big knife and a text that read: "this is for y'all." Petitioner, provoked by respondent's picture and text, filed a petition for a PPO against respondent on September 3, 2021. That same day, the trial court issued a PPO stating that such an order was appropriate because respondent had participated in "repeated threatening and harassing behavior" against petitioner. By its terms, the PPO was immediately enforceable and would remain in effect until March 3, 2022. On September 8, 2021, respondent was served with the PPO. On September 16, 2021, she moved to terminate the PPO, so a hearing on that motion was scheduled for October 11, 2021.

After filing the motion to terminate, respondent then drove a friend to petitioner's home on September 16, 2021, to serve petitioner with the motion. When respondent arrived at petitioner's house, she parked in front of a neighbor's house. Respondent stayed in her car as her friend walked to petitioner's porch and introduced herself to petitioner as someone from the court. Respondent's friend attempted to serve petitioner with the motion, but petitioner refused to accept the paperwork. Petitioner informed respondent's friend that respondent could not be on her property. At this point, respondent left her car, walked to stand on petitioner's driveway, and yelled at her friend to place the paperwork in petitioner's mailbox. When petitioner informed respondent that she was calling the police, respondent dismissed her. The interaction lasted three to four minutes, and a recording of the interaction, as well as a picture showing respondent standing on petitioner's driveway, was captured by petitioner's house camera and provided to law-enforcement officers. On the very next day, September 17, 2021, petitioner moved for an order to show cause why respondent should not be held in contempt of court for violating the PPO. Petitioner also moved to modify the PPO, citing the previous day's interaction as the basis for each form of relief requested. The trial court scheduled petitioner's motions to show cause and to modify the PPO for October 11, 2021.

At the hearing on October 11, 2021, the trial court explained that there were three matters scheduled for review: (1) petitioner's "motion and order to show cause for contempt for violating a personal protection order"; (2) "petitioner's motion to increase the restrictions on contact"; and (3) "respondent's motion to terminate the personal protection order." Describing the sequence of the motions, the trial court explained that "while we have a motion to modify, I cannot consider— excuse me, a motion to show cause, I can't consider motions to modify until the show cause is done. So based upon that, the Court will proceed with the show cause and then we will handle the other issues after that."

Respondent pleaded not guilty to criminal contempt of court and asked the trial court for a court-appointed attorney. The trial court set her personal-recognizance bond at $0 and imposed a condition that she have no contact with petitioner. The trial court then adjourned the hearings on all three pending motions to allow for the appointment of counsel for respondent. On October 25, 2021, the trial court once again adjourned the hearings "due to the unavailability of [respondent's] counsel" and because the "motion to show cause must be heard prior to the other motions."

On November 1, 2021, the trial court conducted the show-cause hearing, which resulted in a finding of criminal contempt for violating the PPO. The trial court sentenced respondent to a 7-day jail term and a $100 fine, but suspended the jail term absent further violations of the PPO and directed respondent to have her fingerprints taken. The trial court then took up petitioner's motion to modify the PPO and respondent's motion to terminate the PPO. Based upon the testimony and other evidence presented by petitioner and respondent, the trial court found:

> This is clearly a mutual dispute. This is not a matter for a personal protection order. Neither one of you was afraid or intimidated or harassed. You were harassing each other. If I was going to grant a PPO, it would be a cross PPO. So neither one of you could talk to each other.

The trial court ruled that it was "not grant[ing] the order to expand" the PPO and was "terminating the [PPO] for failure to meet the legal burden" because "circumstances [did] not exist which would continue the term of the [PPO]." But the trial court stated that the termination of the PPO "does

not negate the contempt finding" because the PPO "was in effect at the time [respondent] violated it." Thus, the suspended sentence of 7 days in jail and the $100 fine remained in place. Respondent now appeals.

## II. LEGAL ANALYSIS

On appeal, respondent raises due-process claims about the timing of the trial court's review of her motion to terminate the PPO. First, she contends that a due-process violation occurred when the trial court failed to consider her motion to terminate the PPO within 14 days, as contemplated by MCR 3.707(A)(2). Second, she argues that the trial court violated her due-process rights when it took up petitioner's criminal-contempt request before resolving respondent's motion to terminate the PPO. Respondent concedes, however, that she "did not argue that the trial court failed to follow the appropriate procedure in granting or reviewing the PPO below." As a result, we may review the two procedural matters petitioner has raised on appeal only for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999) ("the plain error rule . . . extends to unpreserved claims of constitutional error"). " 'To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.' " *In re Contempt of Henry*, 282 Mich App 656, 666; 765 NW2d 44 (2009). A plain "error affected substantial rights or caused prejudice" if " 'the error affected the outcome of the lower court proceedings.' " *People v Lawhorn*, 320 Mich App 194, 197 n 1; 907 NW2d 832 (2017), quoting *Carines*, 460 Mich at 763. Applying these stringent standards, we must decide whether the trial court committed plain error in handling the timing and sequence of the hearings on respondent's motion to terminate the PPO and petitioner's motion for a finding of criminal contempt against respondent.

Respondent frames as a constitutional issue her challenge to the delay in hearing her motion to terminate the PPO, but she relies entirely upon MCR 3.707(A)(2) as the basis for her argument that she was entitled to a hearing on that motion within 14 days of the date of filing. According to MCR 3.707(A)(2), if a person subject to a PPO moves to terminate the PPO, the trial court "must schedule and hold a hearing on a motion to modify or terminate a personal protection order within 14 days of the filing of the motion[.]" Here, respondent filed her motion to terminate the PPO on September 16, 2021, but the trial court initially set a hearing on the motion for October 11, 2021, and ultimately conducted the hearing to resolve the motion on November 1, 2021. To be sure, the delay was largely the result of respondent's request for appointed counsel to address the contempt matter, but the trial court plainly failed to schedule or conduct the hearing on respondent's motion to terminate the PPO until long after the 14-day period prescribed by MCR 3.707(A)(2) expired.

Given the expiration of the 14-day period, the issue we must resolve is whether that delay "affected substantial rights" of respondent. See *Carines*, 460 Mich at 763. To make that showing, respondent must demonstrate "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* Respondent cannot satisfy that requirement. "A party must obey an order of a court with jurisdiction even if the order is clearly incorrect." *In re Contempt of Henry*, 282 Mich App at 680. Failure to do so exposes a party to " 'the risk of being held in contempt and possibly being ordered to comply with the order at a later date.' " *In re Contempt of Dudzinski*, 257 Mich App 96, 110; 667 NW2d 68 (2003). " 'Violations of an order are punishable as criminal contempt even though the order is set aside on appeal or though the basic action has become moot.' " *Id.* In this case, the trial court manifestly had jurisdiction to issue the PPO against respondent, who was

obligated to obey that order as long as remained in effect. *Id.*; see also *In re Contempt of Henry*, 282 Mich App at 680.

Under the circumstances of this case, respondent would have been subject to proceedings for criminal contempt even if the trial court had resolved her motion to terminate the PPO within the 14-day period prescribed by MCR 3.707(A)(2). The PPO went into immediate effect when it was signed on September 3, 2021. Respondent was served with the PPO on September 8, 2021, and she obviously had knowledge of the PPO because she filed a motion to terminate the PPO on September 16, 2021. The 14-day period started to run with the filing of that motion. Respondent violated the PPO on that very same date, nearly two full weeks before the end of the 14-day period. Therefore, respondent committed her act of criminal contempt on a date when she knew the PPO was in effect and the 14-day deadline had not expired. Accordingly, respondent would have been properly subjected to a criminal-contempt proceeding even if the trial court had expeditiously dealt with her motion to terminate the PPO. Thus, the outcome of the proceedings, i.e., termination of the PPO and a finding of criminal contempt with modest sanctions, would not have changed at all if the trial court had held a hearing and terminated the PPO within the 14-day period. As a result, we conclude that the trial court's delay in addressing respondent's motion to terminate the PPO did not affect respondent's substantial rights. See *Carines*, 460 Mich at 763.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Christopher P. Yates

-4-