*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF WARREN,

UNPUBLISHED
March 30, 2023

Plaintiff-Appellant,

v

No. 361257
Macomb Circuit Court
LC No. 2021-004742-CB

QUAD-TRAN OF MICHIGAN INC., formerly
known as QUAD-TRAN INFORMATION
SYSTEMS INC., QUAD-TRAN INC. and QUAD-
TRAN SERVICES INC.,

Defendant-Appellee.

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Plaintiff, City of Warren, appeals by leave granted,[1] challenging the trial court's decisions to deny plaintiff's motion for an evidentiary hearing and to resolve disputed issues related to plaintiff's claim that defendant failed to comply with the terms of the parties' contract with regard to the transfer of computer data. We vacate and remand for a trial on the merits.

## I. BACKGROUND

This is a contentious dispute regarding an offload of data for cases in the 37th District Court which is located in the City of Warren. Since 1991, the 37th District Court (district court) has contracted with defendant Quad-Tran of Michigan for data processing, management, and retention. Specifically, the parties entered into a 5-year agreement titled "Data Processing Services Agreement (the 1991 Agreement) on September 20, 1991. The data processing services to be provided by defendant were "specified on Schedule A" attached to the agreement. Data regarding the district court's cases is stored on a mainframe computer that is owned and controlled by defendant. The 1991 Agreement was extended by mutual agreement through written addendums

---

[1] *City of Warren v Quad-Tran of Mich Inc*, unpublished order of the Court of Appeals, entered August 31, 2022 (Docket No. 361257).

with only minor changes to the terms. However, in 2020 the parties decided to enter into a new services contract when Addendum Eight to the 1991 Agreement was set to expire on July 31, 2020. But the parties were unable to agree on the terms of a new agreement. Although the parties' original contract, as extended by Addendum Eight, expired on July 31, 2020, defendant continued to provide data processing services but advised plaintiff that such services would be discontinued as of October 1, 2020 unless the parties entered into a new agreement. Defendant indicated that, upon request, it would "offload the Court's data per the language in the prior agreement Quad-Tran had with the [Court] and provide the data offload to the Court in an agreed upon format and data storage device."

On September 30, 2020, plaintiff filed its first lawsuit against defendant averring, in part, that defendant's "refusal to execute the 2020 Agreement and repudiation of the same accompanied by a demand that its own, more favorable contract be executed is improper and unlawful." Plaintiff also averred that the "threat to shut down the Court and 'offload' data and records using technology means and methods that were stated in an expired, 29 year old contract is equally improper and unlawful." Plaintiff raised claims of breach of contract and promissory estoppel. In June 2021, a settlement was reached by the parties and memorialized in Addendum Nine to the 1991 Agreement, which stated that defendant would provide the district court with data processing services from June 15, 2021 through January 16, 2022. There was a provision for offloading data, apparently so that the district court could transition its data processing and management to a new vendor.

On December 28, 2021, plaintiff filed this lawsuit against defendant for declaratory judgment and injunctive relief, asserting in a breach of contract claim that defendant breached the terms of Addendum Nine. Specifically, plaintiff claimed that defendant refused to permit after-hours access to data and failed to properly provide the "Only Test File" for the data offload as set forth in Addendum Nine. An ex parte temporary restraining order (TRO) was entered by the trial court on the same date, basically ordering defendant to provide the Only Test File within 48 hours, allowing plaintiff access to defendant's system, and prohibiting defendant from destroying plaintiff's data.

On December 28, 2021, plaintiff also sought an order to show cause why a preliminary injunction should not be entered. On December 30, 2021, defendant filed a request to immediately dissolve the TRO and responded to plaintiff's motion to show cause, arguing that it had been, and remained, willing to provide the Only Test File consistent with the terms of Addendum Nine but plaintiff instead wanted to renegotiate the offload process and refused to authorize the final data offload. Defendant argued that it had prepared a "Statement of Work" detailing and confirming the offload parameters but plaintiff refused to approve those parameters. On January 6, 2022, plaintiff filed a motion for contempt, arguing that defendant did not produce the Only Test File by the date specified in the TRO and should be sanctioned.

On January 10, 2022, a hearing was held on defendant's motion to dissolve the TRO and plaintiff's motion for contempt and request for a preliminary injunction. Plaintiff argued that defendant refused to provide the Only Test File as required by the TRO and Addendum Nine. Defendant argued that plaintiff wanted "absolutely everything" and not just the items detailed in Addendum Nine that were to be included in the Only Test File. There was confusion as to what precise data was to be provided on the Only Test File and defendant argued that a "Statement of

Work" had been sent to plaintiff on December 9, 2021 to confirm the exact data to be produced but plaintiff refused to sign the document and confirm that data. Defendant noted that there were "four to five categories that they have to make selections from," and once defendant had that information, the Only Test File would be made. Plaintiff acknowledged that defendant sent them a "Statement of Work," but it was not signed because "[t]here's no question what they need to provide." Defendant disagreed because plaintiff kept sending correspondence requesting different data so it was very unclear and defendant just wanted confirmation in writing before making the Only Test File but plaintiff refused. Plaintiff's counsel stipulated on the record that defendant's "Statement of Work was an accurate description of what the parties have agreed to for the only test file." Plaintiff then wanted to have 45 days after the Only Test File was received to use the functionality of defendant's data system. Defendant objected, arguing that, according to Addendum Nine, such use was to end January 17, 2022, but plaintiff would be permitted to access data "by inquiry only." Plaintiff's counsel argued that it would be impossible for the court to access open files that are on defendant's server via this method. The court ordered plaintiff to provide the information requested by defendant so that it could produce the Only Test File and the court stated that it would convert the TRO to a preliminary injunction, with "the exact same language," which was to continue until further order of the court. However, no written preliminary injunction was entered by the court on that date.

On March 9, 2022, plaintiff moved for an evidentiary hearing asserting that defendant produced the Only Test File on January 19, 2022 which, although revised on January 27, 2022, contained several deficiencies. According to plaintiff, defendant was to produce the Only Test File "containing sample data sets in each data category so [plaintiff] could confirm correctness, readability and completeness of data before the 'Final Offload' of its data." However, plaintiff argued, defendant failed to provide critical data that was required by Addendum Nine, including money fields, offense descriptions, future events, relevant dates and codes, status fields, and register of action reports. Plaintiff argued that these critical defects had to be addressed and remedied before a final offload of its data could be completed. And further, plaintiff argued, defendant took unauthorized action on February 14, 2022 and limited plaintiff's access to "inquiry only" with regard to the court's data. Plaintiff requested either an evidentiary hearing to demonstrate that defendant did not comply with court orders and Addendum Nine, or an order from the court mandating that defendant correct the Only Test File deficiencies before final offload of its data and allow plaintiff access to the data in the interim.

Defendant opposed plaintiff's motion for an evidentiary hearing, arguing that no evidentiary hearing was required because plaintiff's asserted deficiencies either were for new data fields that were not required under Addendum Nine or arose from issues with plaintiff's own data entry. In brief, defendant argued, "line item details in the money fields" is not required under the parties' contract—only totals must be provided. The "offense description" is not required—only the "charge description" is required. "Future events" data is not required—only the most current hearing date is required. The judgment and garnishment dates—consistent with the data entered by plaintiff—were provided; thus, if the information was incorrect, that was not defendant's fault. Further, the parties' contract did not require "judgment codes" or "status fields" and plaintiff acknowledged those facts in a letter. And defendant specifically rejected an agreement to provide the register of action reports during the negotiation process; thus, this claim was also without merit. Defendant explained that plaintiff sought every data point in defendant's entire system which was overly burdensome and unreasonable in that it would take months to perform the offload and would

expose defendant's proprietary system to a threat of replication. Defendant further argued that plaintiff had access to its paper files for desired data, which are official records, and defendant's system was only a supplement to those paper files. Defendant argued that plaintiff was requesting that the trial court rewrite the parties' contract—expanding its scope to include new, additional data fields—and the court must deny that request and plaintiff's frivolous motion.

On March 14, 2022, the trial court held a hearing on plaintiff's motion for an evidentiary hearing. Plaintiff requested that the trial court hold an evidentiary hearing because defendant was not providing critical data which was required for the district court to function properly. Defendant responded that the parties' contract, Addendum Nine, simply did not require that defendant provide the requested data, so plaintiff was attempting to expand the contract. The data fields that were required to be produced to plaintiff pursuant to their contract had been produced. The data plaintiff claimed was missing was not required under that contract and, therefore, there was no breach of contract and an evidentiary hearing was not necessary.

For example, defendant argued, with respect to the money fields, plaintiff wanted separate data fields showing the details of what was assessed and what was paid but that would require disclosure to plaintiff of defendant's proprietary general ledger and their contract only required the data offload to include "total" fields. Plaintiff had the information, defendant argued, in its paper files and records, as well as in its own ledgers. The trial court clarified that, during the life of the contract, the data that plaintiff put into the system was placed in separate, particular data fields which explained the allocation of money but, with respect to the data offload, defendant only provided a total dollar amount without allocation. Defendant agreed that the court's understanding was accurate, but explained that the contractual offload parameters were different from the day-to-day parameters because of where the information is housed in defendant's system; it is in the general ledger, or cash register, of the system. Defendant said that it was able to give plaintiff a "total" field—but not the line items that plaintiff put into the system—because the "total" field is what exists in the case master record. It is entirely different programming. Plaintiff has access to those line items though in its cash register receipts and in paper files, but plaintiff wants it in electronic form and that is not required by the parties' contract. The court asked defendant if a compromise could be reached and counsel indicated that plaintiff's request would require defendant to go into its proprietary system and recreate the entire programming for the Only Test File. The fee to do that would be $25,000 to $30,000.

Further, defendant argued, plaintiff was not being forthright with the court because plaintiff actually sent defendant a letter which demonstrated that some of the data fields it requested in the offload were not part of their contract. For instance, plaintiff requested by letter that defendant replace the "charge description" field with the "offense description" field, but yet argues to the court that defendant failed to provide the proper data in the Only Test File. Everything was supposed to be decided before defendant made the Only Test File because that is when programming has to be fully and finally set. The purpose of the Only Test File was to identify that the data was being correctly pulled; it was not to renegotiate the data fields. The trial court was persuaded by defendant's argument and concluded that defendant "has complied with what was contracted to do, so their interpretation will hold."

Plaintiff then argued that "future event dates" were required to be provided by defendant but they were not included in the Only Test File. Defendant disagreed, stating that future events

are not a data field in the system and is not included in the data offload; rather, defendant was required to produce the "hearing date" which is the most current—or next—hearing date. All other dates are housed in the register of actions which is not part of the data offload. The court held that defendant need only provide "the next hearing date." Plaintiff then argued that defendant had failed to provide judgment dates, garnishment dates, and judgment codes which were specifically required by their contract yet were not in the Only Test File. Defendant argued that there was an issue with data input from the court and defendant is not required to fix the deficiencies. The court ruled that if defendant is required to provide the information under the parties' contract, defendant must provide it. If it is impossible to provide because of input irregularities, than there is no further obligation.

Plaintiff next argued that defendant had refused to provide "status fields" or "status codes." Defendant argued that status fields and codes are not contractually required to be included in the data offload—which plaintiff knew because plaintiff requested that defendant give it a price to add those matters after the Only Test File had already been completed and to do so would require a reprogramming which defendant was not willing to do. Plaintiff replied that there is a good-faith clause in their agreement which required defendant to add additional information if plaintiff deemed it necessary and defendant responded that such clause only pertained to plaintiff's initial request for data fields—before the Only Test File was completed, and not after the Only Test File was completed.[2] Once the Only Test File is completed, any changes with respect to data fields would require a complete reprogramming. The trial court held that defendant did not have to provide the status field.

Plaintiff then argued that the next issue was defendant's refusal to provide register of action reports. Plaintiff admitted that it was not specifically in their contract with respect to the data offload, but defendant had been required to provide register of action reports during the life of their business contract yet defendant refused to provide access to 35-plus years of register of action reports. Defendant responded that—as plaintiff admitted—register of action reports were not part of the data offload. Moreover, plaintiff always had and does have the ability to print out register of action reports for each case but each case probably already has a register of action in its paper file. Further, defendant argued, it does not have the programming with regard to register of action reports to "just spit it out very easily." The trial court held that defendant did not have to provide the register of action reports. No order was entered by the trial court immediately after this hearing.

On March 21, 2022, plaintiff filed a motion to extend the preliminary injunction and for reconsideration, arguing that an evidentiary hearing was required so that the court could consider evidentiary proofs as to the fields of data to be included in the final offload as set forth in the parties' agreement, i.e., Addendum Nine. Defendant opposed the motion, arguing that plaintiff merely repeated the same arguments and attempted to use the generic "good-faith" provision to override the specific, plain and unambiguous language of the parties' contract. Defendant argued

---

[2] Addendum Nine, contains a "Good Faith" provision which actually states: "THE PARTIES SHALL WORK IN GOOD FAITH TO OFFLOAD AND REVIEW DATA FOR THE ONLY TEST FILE AND THE FINAL OFFLOAD. THIS GOOD FAITH REQUIREMENT IS A MATERIAL TERM OF THIS AGREEMENT." Addendum Nine, ¶ 4(D)(VII).

that the final offload had been ready since February 15, 2022, but plaintiff refused to pay for and accept the final offload although defendant provided all information required by their contract.

On March 28, 2022, the trial court held a hearing with regard to plaintiff's motion to extend the preliminary injunction. To allow the parties to obtain a transcript of the last hearing and work out a final order, the trial court extended the preliminary injunction until April 18, 2022, and also denied plaintiff's motion for reconsideration. On March 29, 2022, an order was entered consistent with the court's ruling and stating that the order did not preclude either party from seeking further relief from the court with respect to duties and obligations under Addendum Nine.

On April 4, 2022, plaintiff filed another motion to extend the preliminary injunction and for reconsideration of the motion for evidentiary hearing. Plaintiff argued that the parties had been unable to agree on an order memorializing the trial court's holdings from the hearing on March 14, 2022. On April 8, 2002, however, plaintiff filed a brief stating that the motion was actually a motion to stay and for extension of the injunction pending appeal but was captioned incorrectly. Defendant opposed the motion, arguing that defendant had fulfilled all of its obligations under the parties' agreement and the court's orders and wanted the business relationship with plaintiff terminated.

On April 4, 2022, plaintiff also filed a motion for leave to file exhibits under seal, noting that various pleadings and documents filed in this case reference or rely on "Schedule C to Addendum Nine" which is a confidential and/or proprietary document that must remain so. Other exhibits that had been filed in this matter in support of briefs also contained "information and/or screenshots of information deemed to be confidential and/or proprietary by Schedule C to Addendum Nine between the parties." Therefore, plaintiff sought leave to file such exhibits under seal because plaintiff would be seeking an appeal.

On April 11, 2022, the trial court held a hearing with regard to plaintiff's motion for leave to file exhibits under seal, which was unopposed and so was granted. The second motion heard was plaintiff's motion seeking a stay pending appeal, as well as an extension of the preliminary injunction. However, because defendant had not yet filed objections to plaintiff's proposed seven-day order, the matter was adjourned for two days.

On April 13, 2022, the trial court heard oral arguments on plaintiff's motion seeking a stay pending appeal, as well as an extension of the preliminary injunction. The court first addressed defendant's objections to plaintiff's proposed order. Defendant argued that there were four categories at issue; first, the judgment codes. Defendant argued that they were not required by Addendum Nine and should not be included in the data offload. Second, the status fields were not required either and are not included in the data offload. Defense counsel explained that all new programming would have to be written to include judgment codes. The court noted that, consistent with its other rulings, if "judgment codes" was not listed in Addendum Nine, defendant did not have to provide them.

The next issue was "hearing date and location." But plaintiff agreed with defendant that it would be sufficient to include the "hearing date field." Next, defendant argued that it could agree to "pull the judgment date as it exists" in a specific field in defendant's system. Plaintiff argued that instead of providing a "judgment date," defendant merely provided a "last hearing date,"

which is not the same thing. Defendant responded, explaining that the system has always functioned the same way—all it can provide is a "judgment date field," and whatever data has been put in the system by the court in that regard is what is being produced to plaintiff. If the word "field" is not included, a manual process would be required to look at every register of action of potentially millions of cases to see if there was a discrepancy. So the court agreed with defendant's proposed language of "judgment date field" but then reconsidered and indicated that the order should say "judgment date" with the qualifier that defendant does not have to manually confirm each such date.

Then defendant indicated that another issue was the garnishment date which had the same problem as the hearing date but defendant was willing to agree to remove the word "field" as long as it was not required to manually search and confirm such information in every file. So "judgment dates" and "garnishment dates" get treated the same way and plaintiff's counsel agreed. Next, the court denied plaintiff's motion for stay but extended the injunction 21 days so that plaintiff had time to seek a stay in this Court. On April 15, 2022, an order denying plaintiff's motion to stay pending appeal and extending the preliminary injunction was entered.

A second order was entered on April 15, 2022, with regard to plaintiff's motion for an evidentiary hearing. The court denied the request for an evidentiary hearing. The trial court order further provides, in relevant part:

> 2. Defendant is not required to correct or supplement the Final Offload in regard to the following alleged Test File deficiencies: (A) the alleged deficiency in "All Money Fields"; (B) the alleged omission of "Charge Descriptions"; (C) the alleged omission of "Status" Codes; and (D) the alleged omission of "Judgment Codes."
>
> 3. Defendant Quad-Tran will provide the "Hearing Date" in the Final Offload as required by Schedule C that is presently displayed in the Hearing Date field in Quad-Tran's system.
>
> 4. Defendant Quad-Tran shall provide the "Judgment Date" and "Defendant Garnishment Date —1st Thru 6th" for all civil cases in the Final Offload as required by Addendum 9. Defendant is not obligated to correct Plaintiff's data input irregularities. Defendant is further not obligated to manually review all data to determine a Judgment Date or Garnishment Date input incorrectly by Plaintiff.
>
> 5. Defendant is not required to provide all past Register of Actions Reports with the Final Offload.

On April 19, 2022 an order was entered granting plaintiff's motion for leave to file exhibits under seal. Those exhibits all refer to Schedule C to Addendum Nine to the Data Processing Services Agreement. Additional exhibits also come within the contemplation of this order "which include information deemed Confidential by Schedule C to Addendum Nine . . . ."

Thereafter, on May 3, 2022, plaintiff filed an application for leave to appeal, along with a motion to stay and to seal certain documents. By order entered May 5, 2022, this Court granted the motion to stay and to seal the particular documents, and held the application for leave in

abeyance pending receipt of further pleadings. *City of Warren v Quad-Tran of Mich, Inc*, unpublished order of the Court of Appeals, entered May 3, 2022 (Docket No. 361257). On August 31, 2022, this Court entered an order granting plaintiff's application for leave to appeal. *City of Warren v Quad-Tran of Mich, Inc*, unpublished order of the Court of Appeals, entered August 31, 2022 (Docket No. 361257).

## II. ANALYSIS

Plaintiff argues on appeal that the trial court erred when it denied plaintiff's request for an evidentiary hearing and proceeded to hold—based only on defense counsel's arguments and not evidence—that defendant was not required to correct the alleged data deficiencies in the Only Test File so that it conforms with the terms of Addendum Nine, the parties' agreement. We agree.

Plaintiff's complaint sought injunctive, declaratory, and other relief arising from a dispute with defendant over the terms of the parties' settlement agreement—Addendum Nine—which led to plaintiff asserting that defendant breached that agreement. A temporary restraining order was entered which, in part, required defendant to produce the Only Test File, prevented defendant from prohibiting plaintiff from accessing the database, and prevented defendant from destroying plaintiff's data. Although at the January 10, 2022 hearing on the parties' motions the trial court indicated on the record that it was converting the TRO to a preliminary injunction—with "the exact same language" and which was to continue until further notice of the court—it appears that no written preliminary injunction order was ever entered by the trial court. It is well established that a court speaks through its written orders and not its oral pronouncements. See *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Nevertheless, the parties and the court proceeded to act as if a preliminary injunction had been entered by the trial court. In fact, on March 9, 2022, plaintiff stated in her motion for an evidentiary hearing that—with respect to the preliminary injunction—"the attorneys in the case were unfortunately unable to reach agreement on the Order resulting from [the trial court's] ruling . . . " But then plaintiff filed a "Motion to Extend the Preliminary Injunction" on March 21, 2022. Defendant did not object and the trial court did not note the fact that there was no written preliminary injunction. And on March 29, 2022, the trial court entered an order granting plaintiff's "motion to extend the preliminary injunction."

Although a written preliminary injunction was not entered by the trial court, it is apparent from the record that the parties and the trial court were operating under the premise that defendant was required to produce the Only Test File that meets the requirements set forth in Addendum Nine. Defendant eventually produced the Only Test File during the lower court proceedings, but then plaintiff brought a motion arguing that the Only Test File did not meet the requirements set forth in Addendum Nine and requested an evidentiary hearing to prove that fact. Defendant's counsel essentially argued that plaintiff was attempting to expand the terms of the contract—not enforce the contract's plain terms. At hearings held on March 14, 2022 and April 13, 2022, the trial court resolved several disputed issues between the parties and denied plaintiff's request for an evidentiary hearing. But the trial court did not explain its rationale or indicate what, if any, evidence it considered in reaching its decisions on the disputed matters. The resolution of the issue whether defendant's Only Test File complied with the terms of Addendum Nine is not self-evident; rather, this is a complicated and somewhat confusing issue.

Plaintiff has argued throughout this case that the district court is unable to function properly with the data as provided by defendant on the Only Test File; it is incomplete and deficient in critical respects. Defendant has contended throughout this matter that it is not required to provide plaintiff with the data in a particular form for a variety of reasons, including that the data actually was complete, Addendum Nine does not require it, the district court has its paper files, or the district court entered incorrect data. It is unclear on what precise grounds plaintiff moved for an evidentiary hearing and on what grounds the trial court denied that motion. However, it appears that plaintiff's motion sought the court's exercise of its contempt powers based on plaintiff's allegation that defendant refused to comply with court orders, as well as directives announced from the bench, and provide an Only Test File that complied with Addendum Nine. See MCL 600.1701(g). A purpose of the civil contempt power is "to preserve and enforce the rights of private parties to suits and to compel obedience of orders and decrees made to enforce those rights and administer the remedies to which the court has found the parties are entitled." *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 500; 608 NW2d 105 (2000). In a civil contempt proceeding, "the party seeking enforcement of the court's order bears the burden of proving by a preponderance of the evidence that the order was violated." See *Porter v Porter*, 285 Mich App 450, 457; 776 NW2d 377 (2009). The accused then must have the opportunity to present a defense. *Id*.

However, pursuant to MCR 2.605(D), plaintiff may actually have been seeking a trial or "speedy hearing" on the merits of the underlying declaratory judgment action alleging breach of contract. The court rule governing declaratory judgment actions provides, in relevant part:

**(A) Power to Enter Declaratory Judgment.**

(1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

\* \* \*

**(D) Hearing.** The court may order a speedy hearing of an action for declaratory relief and may advance it on the calendar.

Further, "[t]he purpose of a preliminary injunction is to preserve the status quo pending a final hearing regarding the parties' rights." *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 647-648; 825 NW2d 616 (2012) (quotation marks and citation omitted). And after a preliminary injunction is granted—which was conceded by the parties and trial court here—final resolution of a dispute should be expedited. Thus, plaintiff's request for an evidentiary hearing may have been based on the court rule governing preliminary injunctions, MCR 3.310(5), which provides:

If a preliminary injunction is granted, the court shall promptly schedule a pretrial conference. The trial of the action on the merits must be held within 6 months after the injunction is granted, unless good cause is shown or the parties stipulate to a longer period. The court shall issue its decision on the merits within 56 days after the trial is completed.

The procedural posture of this case is not clear. The lower court proceedings are rife with anomalies. What is clear, however, is that this action has been pending in the trial court since December 2021 and neither an "evidentiary hearing" nor a trial on the merits has occurred to resolve the disputed issues. There is no evidence in the lower court record from, for example, witnesses like court personnel, computer programmers, or corporate representatives testifying as to the disputed issues. During hearings on the various motions the trial court appears to have accepted unsupported assertations of defense counsel in deciding to reject most of plaintiff's arguments regarding critical deficiencies in the Only Test File, which allegedly failed to comply with the terms of Addendum Nine. For example, defense counsel repeatedly claimed that including certain data on the Only Test File would require extensive reprogramming, would be extremely costly, or was simply impossible, and the trial court accepted these unsupported assertions and ruled in favor of defendant on several disputed issues. The rationale for the trial court's decisions on the matters raised by plaintiff is not evident from the record and does not permit any meaningful appellate review. Instead, for example, the trial court summarily held at the hearing of March 14, 2022: "The Court believes that [defendant] has complied with what was contracted to do, so [defendant's] interpretation will hold." Similarly, the trial court held: "So, you've, if they've, you're required under the contract to provide that information, you're to provide it. If it's impossible to provide because of input irregularities, then so be it." These dispositive rulings, as well as other dispositive rulings, by the trial court do not indicate what, if any, evidence was relied upon or the specific contract language considered in resolving plaintiff's claims against defendant. Therefore, this matter is remanded to the trial court for a trial on the merits of plaintiff's claims to occur within 60 days of the issuance of this opinion unless the parties reach a settlement. We express no opinion on the merits of plaintiff's claims; rather, we conclude that plaintiff is entitled to a resolution of its claims that is based on evidence and not supposition.

The trial court's order dated April 15, 2022, denying plaintiff's request for an evidentiary hearing and purportedly resolving disputed issues is vacated in its entirety. And to the extent that the parties rely on any of the trial court's oral pronouncements from the motion hearings conducted on March 14, 2022 and April 13, 2022, purportedly resolving any other disputed matters between these parties, such pronouncements are without force and effect. This case is remanded for a trial on the merits to occur within 60 days of the issuance of this opinion. Defendant is prohibited from destroying the district court's data and is precluded from preventing plaintiff's inquiry-only access to defendant's system until the proceedings on remand are completed, a judgment is entered by the trial court, and the time for taking an appeal has expired. See MCR 7.216(A)(7).

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello

-10-