*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HILSON, Minors.

UNPUBLISHED
February 13, 2026
2:24 PM

No. 373574
Wayne Circuit Court
Family Division
LC No. 2021-000631-NA

Before: RICK, P.J., and YATES and MARIANI, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to the minor children, AH and MH, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm). We affirm.

## I. FACTUAL BACKGROUND

In May 2021, petitioner, the Department of Health and Human Services (DHHS), received a complaint alleging medical neglect of MH. A Children's Protective Services (CPS) investigation revealed that MH was born ten weeks prematurely. The investigation also indicated that she suffered from pulmonary hypertension and a congenital heart defect that required surgical intervention. MH depended on a gastrostomy feeding tube for nutrition. Despite these serious medical conditions, mother had stopped taking MH to occupational therapy. Additionally, MH had been without prescribed medications for six months and had not seen any medical providers for approximately ten months. Based on mother's apparent failure to provide necessary medical care, DHHS filed a petition seeking termination of mother's parental rights to MH and her sibling, AH, at the initial disposition.

At the preliminary hearing, petition author Steffany Butler testified that DHHS attempted to address MH's medical needs while keeping the children in mother's care. Butler explained that mother had indicated in a previous investigation that she was having transportation issues. This prompted Butler to contact mother's insurance provider and confirm that transportation to medical appointments was covered. Butler learned that mother's insurance would pay for transportation

to all medical appointments. Butler then interviewed mother, who explained that she had been unable to attend MH's medical appointments because she could not find child care for AH. Butler therefore contacted each of MH's medical providers individually to obtain accommodations allowing AH to attend MH's medical appointments. Mother subsequently made a number of medical appointments for MH, but Butler testified that mother and MH did not appear for those appointments. Mother was thereafter instructed to bring MH to Detroit Medical Center's Children's Hospital for a wellness examination. Hospital staff discovered that MH's feeding tube had been disconnected and that the insertion site had begun to heal. Mother initially claimed that the tube had come out the night before, but later admitted that it had been dislodged two to three weeks earlier. Medical personnel also learned that MH had not gained weight in the previous year.

The trial court authorized the petition and found that DHHS had made "active efforts, much more significant than required by law," to prevent removal. The trial court also found that reasonable efforts to reunite respondent with her children would not be required and accepted the permanency plan suggested by DHHS to have the children adopted.

Trial began on May 2, 2022. Mother acknowledged missing supervised visits. She admitted she had not seen her children for several months. She conceded that she continued to miss MH's medical appointments after DHHS intervened and agreed that doing so could endanger MH's life. Mother could not explain why she failed to communicate her difficulties to DHHS. She also admitted that she delayed seeking medical care after MH's feeding tube became dislodged, despite knowing the risk to MH, because she could not find childcare for AH.

Regarding AH, the foster-care caseworker initially assigned to the case, Erica McClure, testified that AH was "in the one[-]percent range" of severe malnourishment when she came into DHHS's care, adding that AH was so weak that she had trouble walking up and down stairs. McClure further testified that AH was so malnourished that she required two initial well-child examinations, with each lasting nearly four hours long and resulting in a number of referrals. When McClure was asked whether AH was exhibiting any signs of food insecurity, McClure responded that AH did in fact have "pretty serious food insecurities," limiting her intake to "two or three foods."

The trial court found statutory grounds to exercise jurisdiction under MCL 712A.2(b)(1) and (2) and statutory grounds for termination under MCL 712A.19b(3)(g) and (j). However, after a best-interest hearing, the court declined to terminate mother's parental rights at that time and instead ordered mother to adhere to a case-service plan (CSP). Under the CSP, mother was required to participate in services, including therapy and parenting classes; secure income and housing; maintain contact with the children; engage with a parent-partner; and learn MH's feeding-tube procedures.

After multiple review and permanency planning hearings showing minimal progress, DHHS filed a supplemental petition for termination on October 3, 2023. Termination proceedings commenced in March 2024. At the termination hearing, foster-care worker Margaret LeRolland-Wagner testified that she consistently attempted to communicate with mother and denied failing to return mother's calls. By the time of the hearing, LeRolland-Wagner contacted mother monthly with information about MH's medical appointments and offered opportunities to attend the

appointments virtually. She also testified that she provided educational resources about MH's feeding tube, including a YouTube instructional video, and offered in-person demonstrations.

LeRolland-Wagner further testified about mother's psychological evaluation, which identified cognitive difficulties but deferred a definitive diagnosis pending treatment of depressive symptoms. LeRolland-Wagner stated that, in light of these considerations, mother's therapist supported mother's participation in the parent-partner program. LeRolland-Wagner testified that she helped mother apply to Section 8 housing in December 2022 and that, as of December 2023, she was still on the waiting list. When asked what else LeRolland-Wagner had done to help mother find suitable housing, LeRolland-Wagner replied that her two parent-partner referrals were a part of those efforts, noting that "they're really great about driving people to look at apartments and helping them with different community resources." She further added that she called a number of domestic violence shelters in the area in light of an incident that mother shared with her therapist. As for LeRolland-Wagner's efforts to help mother with her transportation issues, LeRolland-Wagner testified that mother declined a bus pass when offered, saying she did not need one.

Morgan Williams, the successor foster-care worker, testified that LeRolland-Wagner was diligent in communicating medical information. In light of mother's failure to make genuine progress on her treatment plan over the years, Williams thought that mother was not and would never be prepared to take care of the children. She testified that termination of mother's parental rights would be in the children's best interests.

Johanna Hasselschwert, who had been the children's foster mother since January 2023, testified regarding MH's ongoing medical needs and lifelong feeding challenges. She stated that mother never contacted her regarding medical appointments and that mother participated in only three parenting time visits via Zoom. Hasselschwert additionally testified that AH repeatedly expressed a desire to remain in the foster home. Hasselschwert believed that adoption would be in the children's best interests.

Mother testified that LeRolland-Wagner failed to respond to texts, but admitted that she never attempted to call LeRolland-Wagner to resolve communication issues. According to mother, her circumstances had recently improved: She had recently begun living in a two-bedroom townhouse with a basement and had obtained a car and driver's license. Mother reaffirmed her desire to have her children returned to her. On cross-examination, mother was unable to articulate AH's or MH's specific needs, misstated MH's medications, and demonstrated limited understanding of the children's educational and medical plans. Hasselschwert corrected mother's testimony, clarifying that MH was prescribed Ritalin and that mother attended only one court-ordered evaluation appointment.

The transcript for these proceedings abruptly ends midway through respondent's closing argument. Following an October 31, 2024 order terminating parental rights without articulated best-interest findings, this Court granted a remand for record supplementation. *In re Hilson Minors*, unpublished order of the Court of Appeals, entered May 28, 2025 (Docket No. 373574). On remand, Judge Aliyah Sabree entered a stipulated order memorializing Judge Christopher D. Dingell's earlier findings. The court considered expert opinions, adoptability, the children's

wishes, special needs, time spent in foster care, and brain development. The court found both children highly adoptable, in critical developmental stages, and in need of stability and sophisticated medical care beyond mother's abilities. The court concluded termination was in both children's best interests. This appeal followed.

## II. ANALYSIS

## A. BEST INTERESTS

Mother argues that the trial court erred by finding termination of her parental rights was in the best interests of her children without first making specific findings of fact or conclusions of law to support its ruling. We disagree.

Under MCR 3.977(I)(1), a trial court must "state on the record or in writing its findings of fact and conclusions of law. Brief, definite, and pertinent findings and conclusions on contested matters are sufficient." More generally, a trial court's findings are sufficient "if it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation marks and citation omitted).

Mother claims that "neither" Judge Dingell nor Judge Sabree "provided brief, definite, and pertinent findings and conclusions of law on the record or in writing regarding termination." This argument is predicated on a mischaracterization of the facts. The entire procedure set forth under MCR 7.210(B)(2) presumes that a record was in fact made, but is now simply unavailable.[1] Indeed, the stipulated order documenting the court's findings of fact and conclusions of law—which mother's counsel signed—affirmatively states that "the attorneys of record agree that Judge Dingell made the following findings." Thus, mother's argument that the stipulated order cannot satisfy MCR 3.977(I)(1)'s requirement that the trial court "state on the record or in writing its findings of fact and conclusions of law" fails, because the parties manifestly agree, by virtue of the signed, stipulated order itself, that the court *did* "state on the record" the court's findings of fact and conclusions of law.[2] Moreover, the stipulated findings adequately addressed the children's best interests, including adoptability, developmental needs, medical complexity, placement stability, and mother's failure to benefit from services. Further elaboration would not facilitate appellate review. Accordingly, the trial court satisfied MCR 3.977(I)(1).

---

[1] Specifically, MCR 7.210(B)(2) provides that, when a transcript of the proceedings in the trial court "*cannot be obtained* from the court reporter or recorder, the appellant must take the following steps to settle the record and to cause the filing of a certified settled statement of facts to serve as a *substitute for the transcript*." (Emphasis added.)

[2] As for Judge Sabree, we note that the trial court speaks through its orders. See *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Therefore, mother's claim that "[a]ttorneys are not judges and do not have authority to make decisions on a case regarding termination of parental rights" is inapposite.

## B. REASONABLE EFFORTS

Mother next argues that DHHS failed to make reasonable efforts to reunify her with the children. She therefore maintains that DHHS could not have established statutory grounds for termination of her parental rights. We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A trial court's decision regarding reasonable efforts is likewise reviewed for clear error. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). A finding is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted). For this Court to find clear error, a decision must be "more than just maybe or probably wrong." *Id*. In applying this standard of review, deference is given to the special opportunity of the trial court to judge the credibility of the witnesses who appear before it. *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

Absent a number of statutory exceptions not applicable here, DHHS is required "to make reasonable efforts to reunify families and to rectify the conditions that led to the initial removal." *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). See also MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). Conversely, "there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. at 711.

Here, after initially declining to terminate mother's parental rights, the trial court ordered mother to participate in a CSP. DHHS referred mother for therapy, parenting classes, parent-partner services, housing assistance, visitation, and medical education. Over nearly two years, mother was terminated from services due to nonparticipation, declined re-referrals, failed to attend visits and appointments, and did not meaningfully engage in the services ordered. DHHS additionally accommodated transportation barriers, facilitated virtual medical attendance, provided educational resources, and transported mother and the children for supervised parenting time visits. Despite these efforts, mother attended only two of over one hundred medical appointments and completed only nine parenting time visits in 32 months.

Mother's failure to participate supported statutory grounds for termination under MCL 712A.19b(3)(g) and (j). *In re White*, 303 Mich App at 710-711. Independent of her noncompliance with the CSP, the original neglect was severe. MH went a year without medical care, failed to gain weight, and had a dislodged feeding tube. AH was profoundly malnourished.

As the trial court found, without intervention, the children would have died. Although mother claimed recent improvements in housing and transportation, those late and unverified efforts do not outweigh her persistent inability to meet the children's medical needs. The trial court therefore did not err in finding that reasonable efforts were made and that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*), (g), and (j).

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher P. Yates
/s/ Philip P. Mariani